In re LUTZ & SCHRAMM CO., Inc.

(District Court, W. D. Pennsylvania. July 24, 1916.)

No. 7941.

BANKRUPTCY ⬤⟿318(1)—CONTRACT FOR SALE OF ACCOUNTS—ENFORCEMENT.

A bankrupt corporation sold a large amount in accounts to petitioner under a contract by the terms of which petitioner advanced 77 per cent. of their face value. They were guaranteed, and to be collected by bankrupt, and remitted to petitioner, which was then to pay back the remaining 23 per cent., less any shortage, and an attorney's fee and commission agreed upon. At the time of the bankruptcy petitioner had received less than the amount advanced, but still retained accounts considerably exceeding the difference. Bankrupt's receiver continued to collect the accounts and to retain the proceeds. *Held*, that the contract was not terminated by the bankruptcy, but should be settled in accordance with its terms, and that petitioner was entitled to the stipulated commission and attorney's fee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 469; Dec. Dig. ⬤⟿318(1).]

In Bankruptcy. In the matter of the Lutz & Schramm Company, Incorporated, bankrupt. On review of decision of referee allowing claim of the Commercial Credit Company. Affirmed.

Edmund K. Trent, of Pittsburgh, Pa., for petitioning creditor.
Weil & Thorp, of Pittsburgh, Pa., for bankrupt.
Joseph Stadtfeld, of Pittsburgh, Pa., for claimant.
James Francis Burke, of Pittsburgh, Pa., for trustee.

THOMSON, District Judge. William R. Blair, Esq., referee, has certified for the opinion of the court whether, according to the facts and circumstances set forth in the report and opinion of the referee, the Commercial Credit Company is entitled to recover from the estate of the bankrupt certain compensation and attorney's fees, amounting to the sum of $7,677.29.

The case was argued ably and at length by counsel on both sides, and elaborate briefs submitted. I have considered with much care

---

⬤⟿For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

the report of the referee, the exceptions filed thereto, and the position of counsel as elaborated in their oral and written arguments. After much examination, I am not convinced that the referee erred in awarding the Credit Company the amount of its claim. It would serve no useful purpose in this opinion to state in detail the terms of the contract, as they have mainly been embodied in the report of the referee. Very generally, the case may be stated as follows:

Under the contract of June 17, 1915, the Commercial Credit Company purchased from Lutz & Schramm accounts receivable amounting to $278,636.94, upon which they had advanced $206,748.22, of which there had been repaid to the Credit Company $143,943.13, leaving a balance due the Credit Company of $62,805.09 on account of principal. As these accounts were purchased, they were car-marked on the books of the vendor, so that no question is raised as to the validity of the sale and transfer of the accounts. It appears, further, that at the time of the institution of the bankruptcy proceedings on September 20, 1915, the Commercial Credit Company under the contract was the owner of uncollected book accounts amounting to $132,-595.18, on account of which it had advanced principal $62,805.09, and charged compensation amounting to $3,554.26, or a total of $66,359.35, leaving a balance due Lutz & Schramm Company on said accounts of $66,235.83. It also appears that at that time 77 per cent. of the face value of the accounts so owned by the claimant was $102,098.28, while the Credit Company in fact had only advanced $66,359.35, leaving the amount due Lutz & Schramm, over and above the 23 per cent. retained under the contract, $35,862.45.

Correspondence passed and negotiations were had as to the settlement of the account between the parties. This correspondence was all submitted to the court at the oral argument, and is filed among the papers of the case. The correspondence began on September 22d, on the appointment of the receiver, by a demand on its part for a substantial payment and a statement of how the account stood between them. This was followed by a reply by the Credit Company that they would have a tabulated list of all accounts purchased made up; that it was their invariable rule to at once notify the debtors and take over all accounts direct, but, as there was such a volume of small accounts in the case, if they should do this it would probably injure the firm's business, which they understood to be solvent, and make reorganization less attractive; that, if the receiver would agree to send promptly the original checks on all accounts to them, they would not take the collections over, but permit them to be collected as theretofore. It was further stated that under the agreement they had the right to retain any moneys which they then held, on account of breach of warranties in the agreement, and in view of this they would not care to make any more payments on accounts purchased, until there was sufficient to close the account with the firm, when their interest in all accounts unpaid at that time would cease and such accounts would be reassigned.

This was followed by a number of telegrams and considerable correspondence, which resulted in a petition to this court by the Commer-

cial Credit Company for an order on the receiver to turn over to the Credit Company the proceeds of all accounts purchased by the petitioner which may come into the hands of the receiver. An answer was filed, and a stipulation embodying the status of the account between the parties, and thereupon an order was made by the court, directing that the receiver pay to the Commercial Credit Company the sum of $62,805.09, being the amount of principal due to it at the time of the bankruptcy. It was further ordered that the sum of $8,000 be held to meet the claim of the petitioner for compensation and attorney's fees. Under the stipulation it was agreed that the compensation due to the Credit Company up to September 20, 1915, amounted to the sum of $3,554.26, and that the compensation estimate according to the terms of the contract, from September 20, 1915, to November 20, 1915, amounts to $3,123.03, in addition to which the claim of $1,000 for attorney's fees is made.

There is no objection to the first claim—the last two being objected to on the ground that the receiver never accepted the said contract, and is not bound by its terms for any period subsequent to its appointment; that the Credit Company did not fulfill the provisions of its contract, and therefore can claim no compensation subsequent to the appointment of the receiver; and that the delay in the payment of the principal sum owing to the Credit Company was due to the negligence of the said company in failing to pursue its legal remedies and in failing to submit to the receiver in proper form the amount of its claim. While the compensation claimed may seem large for the service rendered, it is the compensation provided for in the contract. The question of usury cannot arise, as under the ninth clause of the contract its provisions are to be construed and interpreted under the laws of the state of Delaware, and in that state under such contracts the parties may charge "such amounts as may be agreed upon by the respective parties."

The court's duty is in no sense to revise the contract, but to give it effect according to its terms. Santa Fé Ry. Co. v. Grant, 228 U. S. 177, 33 Sup. Ct. 474, 57 L. Ed. 787. Under the terms of the contract, the Credit Company was the absolute owner of the accounts. They had been duly transferred to that company. Seventy-seven per cent. of the net face value was to be paid in cash when the accounts were accepted, and the remaining 23 per cent., less charges, upon payment of the accounts to the vendor. The vendor was made the collecting agent of the vendee and it was its duty to collect the bills and pay them over to the Credit Company. It is true that at the time of the bankruptcy proceedings, the Credit Company owed a balance of over $35,000 on account of the 77 per cent.; but it is also true that at that time under the terms of the contract there was a very large balance due to the Credit Company which was afterwards adjudicated by the court in its favor. It is also true that Lutz & Schramm had by the fifth clause of the contract warranted that the—

"first party and each debtor named in an account is solvent and will remain so until maturity thereof; there will be no suspension of business, request for general extension, bankruptcy petition, nor any act amounting to a business failure by or against first party or any debtor."

When proceedings in bankruptcy had started against Lutz & Schramm, it could not be expected that the Credit Company would pay the balance it owed to the receiver when the estate was at that time indebted to it in a very much larger amount. The contract provided that:

"Either party here shall have the right at any time to cancel this agreement as to future transactions."

This, it will be observed, related to future transactions alone. So far as the accounts already purchased were concerned, their status was definitely fixed. As to them the receiver would have had no power to cancel the contract or strike down the rights of the purchaser thereunder. When the receiver took possession of the assets, it found that certain accounts had been duly sold and assigned on the books of the bankrupt to the Credit Company, and were duly earmarked as their property. With knowledge of this fact, the receiver subsequently received into its hands funds belonging to the Credit Company on account of the accounts so assigned. These funds belonged to the Credit Company. The moving consideration for the purchase of the accounts was the compensation to which the company was entitled. It is, no doubt, true that the contract contemplated a going concern, and would naturally terminate so far as future purchases of accounts are concerned; but the money which is now claimed as compensation is for accounts that were already purchased prior to the bankruptcy proceedings. And under the authority of the court the receiver continued the operation of the business of the bankrupt concern in order to preserve its good will. In connection therewith, it collected the accounts which had been sold to the Credit Company. If that be material, to that extent at least the receiver affirmed the contract pro tanto. The collection of the accounts by them was for the benefit of the bankrupt estate, so as not to interfere with the preservation of the good will.

The receiver represents the estate of Lutz & Schramm, and its rights are no broader than those of the bankrupt. The bankrupt and its receiver must at all times have been in possession of the information necessary to determine the amount due the company and the rights of the parties in the premises. The amount of compensation depended upon the time of payment. Under all the circumstances of the case, I can see no legal reason why the claimant is not entitled to the compensation provided in the contract. As the contract provides for attorney's fees, and the amount charged is not claimed to be out of proportion to the services rendered, I am also of opinion that this claim should be allowed.

The report of the referee is therefore affirmed.