## COMPANIA ANONIMA MARITIMA UNION v. STRACHAN SHIPPING CO.

(Circuit Court of Appeals, Fifth Circuit. October 31, 1919. Rehearing Denied December 6, 1919.)

### No. 3357.

1. SHIPPING ⬤⟶39—CHARTER PARTY; CONSTRUCTION OF CESSER CLAUSE.

A charter party containing a cesser clause is to be so construed, if possible, as not to have the effect of terminating the charterer's liability to the shipowner for breach of a provision which is not left or made enforceable against the cargo or a person or thing other than the charterer.

2. SHIPPING ⬤⟶177—DEMURRAGE; CONSTRUCTION OF CESSER CLAUSE IN CHARTER PARTY.

Though the cesser clause of a charter party found in the printed provisions declared that on shipments of cargo and acceptance by the master, and on settlement of dead freight, if any, or any freight not represented by bills of lading, the charterer shall be deemed to have fulfilled the charter party, etc., held that, where the charterer did not have the cargo discharged at destination within the period fixed by a written provision of the charter party, the written provision prevails over the cesser clause, under the rule that, where there is a repugnancy between written and printed provisions of a contract, the writing will prevail; hence the charterer was liable for the delay.

3. SHIPPING ⬤⟶177—DEMURRAGE; DELAY IN UNLOADING.

Where a charter party fixed a reasonable time for discharge of cargo, the charterer is liable for failure to discharge the cargo within that time, it having failed to provide a berth as required by the charter party, notwithstanding the charter party provided that the master of the vessel should pay the stevedore selected by the charterer.

4. SHIPPING ⬤⟶177—DEMURRAGE; DELAY IN UNLOADING.

Where a charterer failed to discharge cargo within the time fixed by the charter party, and the owner of the vessel thus lost profits, the charterer is liable in damages to the owner.

Appeal from the District Court of the United States for the Southern District of Georgia; Beverly D. Evans, Judge.

Libel by the Compania Anonima Maritima Union against the Strachan Shipping Company. From a decree dismissing the libel, libelant appeals. Reversed.

A libel in personam was filed by the appellant, the owner of the steamship Jupiter, against the appellee, the charterer of that ship, for the carriage of cargo from Savannah and Charleston to Barcelona and Genoa, one or both. The libel was for the recovery of damages claimed to have been sustained by the libelant in consequence of the alleged wrongful detention of the vessel for the space of 51 days over and above the time allowed for discharging the cargo at Genoa. The charter party was made an exhibit to the libel. It was averred that part of it was printed, and that the following clause of it was written and not printed: "If full cargo shipped to Genoa, fourteen (14) running days (Sundays and holidays excepted), to be allowed for discharging.

⬤⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Part cargo proportionate time—time counting on her arrival off port, berthed or not, any custom of the port to the contrary notwithstanding."

Among the printed provisions of the charter party are the following: "And having arrived at the port or ports of discharge as ordered, or so near thereto as she may safely get, shall then deliver the same, in such docks, places, anchorages, or alongside such wharves as the charterers may appoint, and when she can tie safely afloat, agreeably to bills of lading, on being paid freight, in full of all port charges and pilotage, etc. * * * The captain shall sign bills of lading as and when presented * * * without prejudice to this charter party, * * * the said steamship to be discharged with all possible dispatch according to the custom of the port of discharge. * * * The shipowners shall have a lien on the cargo for all freight, detention, demurrage and dead freight, if any, but upon shipment of the cargo and acceptance by the master, and on settlement of dead freight, if any, or of any freight not represented by bills of lading, and of demurrage if any at port of loading, charterers shall be deemed to have fulfilled this charter party, and shall be under no liability thereafter, under any provisions thereof, for any matters, past or future, or for any loss, damage or other claim of breach of charter party, * * * charterers to have the right of nominating a stevedore for discharging the cargo at port or ports of discharge, but the stevedore to be employed and paid by the owners at not exceeding current rates."

The printed part of the charter party contained provisions for the freight being collected by the agents of the charterer; it being agreed that the vessel should be consigned to said agents. It was alleged that the charterers refused, when demanded by the master, to incorporate into bills of lading signed by them the conditions of the charter party, and signed "clean bills of lading," under which there was no lien on cargo for loss or damage resulting from the alleged wrongful detention of the vessel at Genoa. It was averred that after discharging as ordered the part of the cargo which was consigned to Barcelona, the ship, on March 13, 1915, proceeded to the port of Genoa, and arrived off the port and in the outer harbor of Genoa on March 14, 1915; that without fault or remissness on the part of the libelant, respondent by its own fault failed to provide and appoint docks, places, or anchorages where the ship could deliver and discharge the part of the cargo consigned to Genoa, that part being two-thirds of the entire cargo, until the 27th day of April, 1915, when the discharging first commenced, it not being finished until May 17, 1915, whereby the ship was detained for the space of 51 days over and above the time allowed for discharging cargo at Genoa, and that by such detention the libelant lost the earnings of said ship for 51 days, was prevented from filling other contracts of affreightment then existing, and lost the use of the ship in making other voyages and earning freight, to the damage of the libelant in the sum of $46,313.96.

The appellee excepted to the libel on the following ground, among others: "The said libel does not set forth any cause of action against this respondent." The court dismissed the libel "as being insufficient in law to state a case against respondent." The appeal is from the decree to that effect.

George T. Cann, of Savannah, Ga., for appellant.

Samuel B. Adams and A. Pratt Adams, both of Savannah, Ga., for appellee.

Before WALKER, Circuit Judge, and FOSTER and GRUBB, District Judges.

WALKER, Circuit Judge (after stating the facts as above). The action of the court in dismissing the libel is shown by the opinion rendered to have been the result of the conclusion reached that the libelant was deprived of any right to recover for a breach of the above-quoted written clause of the charter party by the provision of the above-quoted printed clause, commonly called the cesser clause, that:

"Upon shipment of the cargo and acceptance by the master, and on settlement of dead freight, if any, or of any freight not represented by bills of lading, and of demurrage, if any, at port of lading, charterers shall be deemed to have fulfilled this charter party, and shall be under no liability thereafter, under any provision hereof, for any matters, past or future, or for any loss, damage, or other claim of breach of charter party."

[1] The cesser clause now in question differs from such clauses involved in reported cases to be referred to in that it expressly provides for the termination of the charterer's liability:

"Upon shipment of the cargo and acceptance by the master, and on settlement of dead freight, if any, or of any freight not represented by bills of lading, and of demurrage, if any, at port of loading"

—without the shipowner being given any other means, in lieu of the lien on cargo which it had before, of securing indemnity for breaches of provisions of the charter party which could not be performed, and could not even be entered upon, until after the ship left the loading port. It is settled that a charter party containing a cesser clause is to be so construed, if possible, as not to have the effect of terminating the charterer's liability to the shipowner for the breach of a provision which is not left or made enforceable by the shipowner against the cargo, or a person or thing other than the charterer. Crossman v. Burrill, 179 U. S. 100, 21 Sup. Ct. 38, 45 L. Ed. 106. The charter party under consideration in the case cited contained the following:

"Vessel to have an absolute lien upon the cargo for all freight, dead freight, and demurrage. Charterers' responsibility to cease when vessel is loaded and bills of lading are signed."

The bills of lading signed gave no lien for demurrage at the discharging port. It was held that the cesser clause there in question did not, under the circumstances stated, relieve the charterers from liability for the demurrage incurred at the discharging port. In the opinion in that case it was said:

"The charter party, like many mercantile instruments in common use, is drawn up in brief and disjointed sentences, and must be construed according to the intent of the parties as manifested by the whole instrument, rather than by the literal meaning of any particular clause, taken by itself."

Following that statement was an approving reference to the decisions in the cases of Clink v. Radford, [1891] 1 Q. B. 625, and Hansen v. Harrold, [1894] 1 Q. B. 612, and the opinion quoted as follows from the opinions rendered in the first mentioned of those two cases:

"In Clink v. Radford, Lord Esher said: 'In my opinion, the main rule to be derived from the cases as to the interpretation of the cesser clause in a charter-party is that the court will construe it as inapplicable to the particular breach complained of, if by construing it otherwise the shipowner would be left unprotected in respect of that particular breach, unless the cesser clause is expressed in terms that prohibit such a conclusion. In other words, it cannot be assumed that the shipowner, without any mercantile reason, would give up by the cesser clause rights which he had stipulated for in another part of the contract.' Lord Justice Bowen said: 'There is no doubt that the parties may, if they choose, so frame the clause as to emancipate the charterer from any specified liability without providing for any terms of compensation to the shipowner; but such a contract would not be one we should expect to see in a commercial transaction. The cesser clauses, as they generally

come before the courts, are clauses which couple or link the provisions for the cesser of the charterer's liability with a corresponding creation of a lien. There is a principle of reason which is obvious to commercial minds, and which should be borne in mind in considering a cesser clause so framed, namely, that reasonable persons would regard the lien given as an equivalent for the release of responsibility, which the cesser clause in its earlier part creates, and one would expect to find the lien commensurate with the release of liability.' And Lord Justice Fry added: 'The rule that we are prima facie to apply to the construction of a cesser clause followed by a lien clause appears to me to be well ascertained. That rule seems a most rational one, and it is simply this: That the two are to be read, if possible, as coextensive. If that were not so, we should have this extraordinary result: There would be a clause in the charter party the breach of which would create a legal liability, there would then be a cesser clause destroying that liability, and there would then come a lien clause which did not recreate that liability in anybody else.' " [1891] 1 Q. B. 627, 629, 632.

Under the above-stated rules for construing charter parties, it is questionable whether, in the absence of a circumstance to be mentioned, the literal meaning of the clause providing for a cesser of the charterer's liability to the shipowner would be followed, when to do so would result, in situations likely to arise, in depriving the shipowner of any benefit from such a provision as the one specifying the time allowed to the charterer for discharging cargo at its destination. It well might be inferred that it was contemplated that the expressed intent of the parties in reference to such a matter as the one dealt with in the last-mentioned provision would prevail over an inconsistent intent expressed by the broad general terms of the charter party's cesser clause, and that it was not intended that the ship-owner was to relinquish all benefit of the stipulation as to discharging cargo without being compensated in some way for doing so.

[2] But the contention urged in behalf of the appellee that, in the circumstances disclosed, the printed cesser clause has the effect of depriving the appellant, the shipowner, of any remedy at all for a breach of the above-quoted written provision of the charter party cannot be sustained without a disregard of the well-settled rule that, if there is repugnancy between the printed and written provisions of a contract, the writing will prevail, on the ground that presumably it expresses the specific and paramount intention of the parties. Thomas v. Taggart, 209 U. S. 385, 28 Sup. Ct. 519, 52 L. Ed. 845; Hagan v. Scottish Ins. Co., 186 U. S. 423, 22 Sup. Ct. 862, 46 L. Ed. 1229. The last-cited case involved a marine insurance policy made out by using a blank printed form and adding provisions in writing. It was said in the opinion in that case:

"Courts will not endeavor to limit what would otherwise be the meaning and effect of the written language, by resorting to some printed provision in the policy, which, if applied, would change such meaning and render the written portion substantially useless and without application."

If the cesser clause now in question is given the effect of terminating all liability of the charterer "upon shipment of the cargo and acceptance by the master, and on settlement of dead freight, if any, or of any freight not represented by bills of lading, and of demurrage, if any, at port of loading," the result would be, on the happening at the

port of loading of things which well might be expected to happen, to make the written clause specifying the time allowed for discharging cargo at Genoa a promise which the charterer with impunity could fail or refuse to comply with; the shipowner being left without any remedy for the breach. The incorporation of the cesser clause in the printed charter party form was unaccompanied by any intention to affect the charterer's liability for a breach of a provision specifying the time allowed for discharging cargo, as the latter provision was not part of the printed form, but was added in writing. It cannot be supposed that the parties contemplated that that provision could be breached wrongfully without any enforceable liability to the shipowner being incurred.

Nor can it be supposed that the provision would have been inserted, if the parties had had it in mind that the shipowner would be deprived of the benefit of it upon the happening at the port of loading of the things to which the terms of the printed cesser clause give the effect of terminating all liability of the charterer under the charter party, without there being any substitution of liability and without the shipowner being compensated for the loss of the benefit of the written provision. So to suppose would involve the conclusion or assumption that the parties in writing inserted a provision, a breach of which would create a legal liability in favor of the shipowner against the charterer, and intended that, under a printed provision of the contract, all liability of the charterer for the breach would be destroyed by the happening at the port of loading of things such as might be expected to happen there in the ordinary course of events, and the happening of which would have no relation to or bearing upon the matter dealt with in the written provision. If controlling effect is given to the cesser clause, the written provision is rendered substantially useless, in a situation which the parties must have contemplated as likely to arise. Under the circumstances disclosed effect cannot be given to both the written provision in question and the printed cesser clause. The two provisions are repugnant, if the latter is given the literal meaning expressed by its words. That being so, the written provision prevails.

[3] The obligation imposed on the charterer by the written provision that the cargo be discharged within the time stated was not affected by the provision which gave the charterer the right of nominating a stevedore for discharging the cargo at a port of discharge, the stevedore so nominated to be employed and paid by the shipowner. When under a charter party it is incumbent on the charterer to provide a berth for the ship at the port of discharge, and to discharge the cargo within a stated time, and delay in discharging cargo is due to the charterer's breach of those obligations, a detention of the vessel due to such causes is made none the less chargeable against the charterer by the fact that the shipowner employs and pays the stevedore nominated by the charterer for discharging cargo. The fact that the master employs and pays the stevedore nominated by the charterer does not stand in the way of delays in getting the vessel berthed and in discharging the cargo being chargeable against the charterer. Pos-

sible controversy as to what is a reasonable time for discharging cargo is avoided by specifying the number of days allowed the charterer for discharging.

[4] The averments of the libel show that the charterer was at fault in delaying to provide a berth for the ship at Genoa, and in taking greatly more time than was allowed for discharging cargo shipped to that port, and that the detention of the ship thereby caused resulted in financial loss to the libelant. If the libel's averments of damage were not sufficiently definite to disclose how the loss alleged was caused by the breach of duty complained of, as suggested in grounds of exception which were not ruled on, the defect was one which was curable by amendment. Where the averments of a libel in admiralty show, with reasonable certainty, the existence of a legal duty owing to the libelant, a default therein, and consequent injury, it should not be dismissed on the ground that it does not disclose a cause of action. Loss of profits, or of the use of a ship, caused by its detention at the port of discharge, due to the fault of the charterer, gives a right of action to the shipowner. The Conqueror, 166 U. S. 110, 17 Sup. Ct. 510, 41 L. Ed. 937; The El Monte, 252 Fed. 59, 164 C. C. A. 171. As the averments of the libel here in question show the existence of such a cause of action in the libelant, it was not subject to be dismissed on the ground on which it was dismissed, without an opportunity being given to cure amendable defects it may have had.

From what has been said, it follows that the decree appealed from was erroneous. That decree is reversed.