## BOISE v. TALCOTT et al.

(Circuit Court of Appeals, Second Circuit.  February 18, 1920.)

### No. 121.

1. **Bankruptcy ⬤178(1)—Contract making one factor and selling agent not in fraud of creditors.**

    A contract whereby T. was made sole factor and selling agent of a corporation in financial difficulties, and made advances to the corporation, and had supervision of its accounts and credits, *held* not in fraud of creditors, and to give the factor a valid lien, against corporation's trustee in bankruptcy, to the extent of his advances, in view of his actual possession and control of the goods, and the publicity and notice given of the manner in which the business was being carried on.

2. **Bankruptcy ⬤151—Trustee takes title subject to claims, liens, and equities.**

    A trustee in bankruptcy takes the property of the bankrupt, not as an innocent purchaser, but as the debtor had it at the time of the petition, subject to all valid claims, liens, and equities.

3. **Factors ⬤44—Contract construed to entitle factor to commissions on accounts assigned to him.**

    A contract making T. sole factor and selling agent for a corporation in financial difficulties, and providing that he should receive 10 per cent. on sales for his services, and requiring him to collect accounts at his own expense, entitled him to commissions on accounts receivable for merchandise purchased prior to his entry into the business, which were assigned to, and checked up and collected by, him.

4. **Interest ⬤60—Carrying balance on interest-bearing account into new account not compounding of interest.**

    Under a contract making one sole factor and selling agent for a corporation, and providing that interest should be charged and credited on the account current between the parties, where accounts were rendered monthly, and interest charged on the accounts current, and the balance on each account was carried forward and started on the next account, in accordance with the usual custom of merchants, there was no basis for the claim that interest was thereby compounded.

5. **Account stated ⬤8—Accounts rendered, and not objected to, impeachable only for fraud or mistake.**

    Where a factor rendered daily statements and monthly accounts to the principal, which were not objected to, the rule applied that where an account is rendered between business men, and no objection is made at the time, it can only be successfully impeached for fraud or mistake.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Edward B. Boise, as trustee of the estate in bankruptcy of Daly & Schaefer, Incorporated, against J. Frederick Talcott, Grace Van Norden, and Henrietta E. Talcott, as executor and executrices under the last will and testament of James Talcott, deceased. Decree for complainant. Complainant appeals. Affirmed.

See, also, 212 Fed. 268.

Erwin, Fried & Czaki, of New York City (Marion Erwin and Frederick M. Czaki, both of New York City, of counsel), for appellant.

Gleason, Vogel & Proskauer, of New York City (Joseph M. Proskauer and Wesley S. Sawyer, both of New York City, of counsel), for appellees.

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before ROGERS and MANTON, Circuit Judges, and LEARNED HAND, District Judge.

MANTON, Circuit Judge. James Talcott, since deceased, on December 28, 1908, entered into a contract with Daly & Schaefer, Incorporated, by the terms of which Talcott became the sole factor and selling agent of Daly & Schaefer, Incorporated, then in financial difficulties, and subsequently adjudicated a bankrupt. The appellees are the executors of James Talcott, deceased.

Under the terms of this contract, it was agreed that Talcott would make loans to the bankrupt up to 40 per cent. of the net cost of the goods in his possession and up to 75 per cent. of the net value of the outstanding accounts assigned to him, after first deducting his charges, which were fixed at 10 per cent. These charges were considered discounts. For the service as factor and selling agent, Talcott was to receive 10 per cent. on the first $170,000 in sales and 5 per cent. on all other sums in excess thereof. Commissions were to be computed on the net sales. Interest was to be charged by both sides in their calculations on the account current at the rate of 6 per cent. per annum. It was agreed that Talcott would supervise all accounts and credits and keep the accounts of the business in the main store at No. 180 Franklin street. He was to collect the accounts at his own expense and pay the rent of the premises used for the business. He was to have exclusive possession and control of the merchandise and accounts. The right to lease gave him also the exclusive possession and control of the building. Upon this building it was agreed that he placed the sign, reading "James Talcott, Factor for Daly & Schaefer, Inc." Two officers of Daly & Schaefer, Incorporated, guaranteed the contract on its behalf. The contract ran for one year, and it was provided that it might be continued thereafter.

This action is brought, charging that this contract was made to carry out a scheme or means of defrauding the creditors. It is charged, in the complaint, that the contract was but a blind, and was contrary to the real intent, design, and purpose of the parties thereto, and was used as a cover adopted to disguise the real purpose and intent of the parties. The charge is that the bankrupt continued in the exclusive possession, custody, and control of the premises and occupied it and had control of the property in its possession at the time of making the agreement, and, in effect, continued to carry on the business as the bankrupt; that no notice was given to the creditors that a factoring contract, or any other lien, existed in favor of Talcott. The general charge is that the contract was preconceived with the intent and desire to hinder, delay, and defraud creditors, and it is charged that in carrying out this plan credits were extended to the corporation. The prayer for relief asks that the contract be adjudicated void, and that the benefits which the defendants derived therefrom be refunded, and that it be adjudicated that the defendants have no lien, possessory or otherwise, in the merchandise or accounts receivable that were due and owing under the contract pursuant to the defense interposed at a trial had in the District Court, it was decreed that these charges were

not well founded, that the contract was valid and binding, and that Talcott obtained a lien as a factor, and was entitled to the payments pursuant to the terms of the contract, for commissions as such factor.

A special master was appointed to pass on the accounts. He reported an amount due to the complainant of $5,367.24. This has since been confirmed by the District Court. From a final decree, this appeal has been taken.

[1] The trial court found that there was no bad faith, and that the evidence did not warrant the claim of a secret lien, and found, on the contrary, that in pursuance to the terms of the agreement large sums of money, amounting to approximately $430,780 were advanced from time to time, pursuant to the agreement, in good faith. Further, the court found that a valid lien on the goods comprising the stock on hand at the time the bankruptcy proceedings were instituted and that which was bought by the bankrupt during the continuance of the factor's agreement and consigned in writing to Talcott. The court said such a lien was well recognized as a possessory lien, and that there was actual possession of the property by the lienor. We agree in the conclusion reached that Talcott had a valid lien on the property, which is the subject of this controversy, and also that such liens were created pursuant to a factor's agreement, and were valid to the extent of the advances made. Talcott was a factor and banker in the dry goods trade. It appears that in December, 1918, the firm of Salen & Schroeder were financing Daly & Schaefer, Incorporated. The former was a copartnership engaged in business in New York and Paris. They bought on commission, and assumed the credit or liability, paying the bills of the sellers, and collecting the amounts from the parties for whom they bought. Daly & Schaefer, Incorporated, was engaged in the same business. Salen & Schroeder subordinated any claim they might have to Talcott's lien, and this prior to the commencement of the relationship between Talcott and Daly & Schaefer, Incorporated.

Since Salen & Schroeder are the principal creditors, it is of importance to note that they, by this conduct, became fully cognizant of the factor's agreement. When the contract was extended, Salen & Schroeder executed a second subordination agreement. Pursuant to the contract, Talcott entered into possession, leased the premises, paid the rent therefor, placed signs in conspicuous places at the entrance to the building, reading, as the contract provided: "James Talcott, Factor for Daly & Schaefer, Inc." These signs were 2 feet 9¾ inches by 2 feet 1 inch. A representative of Talcott was constantly at the place of business; books were kept and accounts rendered monthly. Notice of the factor's control of the business was indicated by a notice prominently posted in the place of business that—

"No goods are to be shipped from these premises by any one except the representative of James Talcott. This order must be strictly complied with."

A further notice that—

"No goods are to be shipped from these premises unless shipping ticket thereof has first been checked by Mr. Gus Blum as representative of James Talcott. This rule must be strictly complied with."

Notice of the change and the relationship were given to the prominent commercial agencies and written notice was given to the customers. The management and conduct of the business was cared for by Talcott's representative, Mr. Blum. The evidence is replete with this constant supervision. When goods were consigned to merchants, both by the bills and by the receipts, it was plain to them that Talcott was in charge of the business as factor. The accounts which were collected and the statements which were rendered all indicate such a change and a relationship pursuant to the contract. Indeed, it is hard to conceive how the trade could have been more pointedly and carefully notified of the existence of the contract and the possession and management by Talcott. The same may be said as to the foreign creditors. Such notices as were necessary to send to foreign creditors, and the statements rendered, indicate the same result. Nor do we think that the testimony of creditors taken in France and Belgium indicate that any of the creditors in these foreign countries extended credit because of any apparent ownership, where there was a secret lien.

This method of financing an embarrassed commercial concern in this line is common, and the right to do so is recognized by the courts. Sexton v. Kessler & Co., 172 Fed. 535, 97 C. C. A. 161, 40 L. R. A. (N. S.) 639. Where, as here, Talcott had actual possession and control of the goods, and sufficient publicity and notice thereof was given as of the transactions carried on in due course of business, it was held that, when good faith is established, a valid lien will be upheld in favor of the lender against the borrower or general owner. First Nat. Bank of New Kensington v. Penn. Trust Co., 124 Fed. 968, 60 C. C. A. 100; Phila. Warehouse Co. v. Winchester (C. C.) 156 Fed. 600. Transactions of this kind are viewed on the broadest equitable principles, and a court will not hesitate to effectuate the actual intent of the transaction honestly had with a bankrupt. Gage Lumber Co. v. McEldowney, 207 Fed. 255, 124 C. C. A. 641; In re Cattus, 183 Fed. 733, 106 C. C. A. 171.

Ownership of securities, where there has been no change of possession, will be protected, if they are set apart and marked in such a way as to give notice to the public. Sexton v. Kessler & Co., supra. And it is only where there is some active concealment, and an attempt to mislead any one interested to know the truth, that the courts will interfere. And this was held where the trustee in bankruptcy sought to have paid over to him proceeds of accounts receivable, alleged to have been assigned to him by the bankrupt. Greey v. Dockendorff, 231 U. S. 513, 34 Sup. Ct. 166, 58 L. Ed. 339.

[2] A trustee in bankruptcy takes the property of the bankrupt, not as an innocent purchaser, but as the debtor had it at the time of the petition, subject to all valid claims, liens and equities. Zartman v. First Nat. Bank of Waterloo, 216 U. S. 134, 30 Sup. Ct. 368, 54 L. Ed. 418.

In the principal case relied upon by the appellant (Ommen v. Talcott, 188 Fed. 401, 112 C. C. A. 239), the circumstances were different. There the bankrupt paid the rent and kept the keys, and the court concluded that there was nothing to show that the defendant or any

one in his behalf was ever in possession, custody, or control of any of the property of the company at its premises until just before the bankruptcy. There were no signs indicating possession or control by a factor. There was no person representing the alleged factor. The actions of the bankrupt failed to indicate that a factor was in charge of his business.

In Ryttenberg v. Schefer (D. C.) 131 Fed. 313, the court found advances were made under circumstances which gave rise to no lien attaching to the goods, for the goods were bought by the bankrupt and remained in his possession on his own premises or to the proceeds realized on their sale. The evidence in the case at bar is quite the contrary to that presented in the Ryttenberg Case.

We think that the contract was fully lived up to by appellee's intestate, and that both parties thereto carried out the same in good faith, with an honest intention to create a valid lien for advances made, and such a lien was therefore created.

The advances made to Daly & Schaefer, Incorporated, were made on written applications and were in evidence on the accounting. A daily report of the collections was made, showing each payment received, the name of the customer, and the gross amount of the bills, the discount, and the net amount. Thus a detailed statement each day, which permitted the checking up of the total receipts of each day, and also the total receipts of the month itemized for each day, which were credited in the account current, were delivered at the beginning of the succeeding month. The receipt of these daily statements, and the monthly statement, and the account current is not denied. Indeed, a very full statement was delivered. The commissions on the sales reported during the month were computed in the account current and added into the account to make up the new balance at the beginning of the following month. Sales were totaled, the credits for returned goods were deducted, and discounts deducted, and 10 per cent. taken of the remainder. This was in strict accord with the contract between the parties.

The account filed in this proceeding consisted of the account current rendered as stated each month up to the bankruptcy, and as made out at the beginning of the month in the same way from the time of the bankruptcy on. Vouchers were presented, covering the items of the account, and the sale of goods by appellees' intestate after the bankruptcy was fully described and accounted for. The special master found that these accounts sent daily each to the other, which were memoranda of the day's transactions, and subsequently the rendering of full monthly accounts, were received, and not objected to. He concluded that this course of dealing amounted to a prima facie statement and settlement of the accounts. He found that it was proper for the appellee's intestate to charge for commissions on the $59,513.60, both of accounts and of sales assigned. He found that no objection was made to these accounts by Daly & Schaefer, Incorporated, and that the trustee could not now object. Upon all this, he found a settlement of the accounts prior to the bankruptcy. He permitted a

264 F.—5

charge of 10 per cent. commission on the first $170,000 of sales in the year 1911.

[3-5] These conclusions are amply supported by the evidence and by the contract. It was proper to allow commissions on the first $59,-513.60 for sales assigned. The sales referred to in the contract must necessarily mean the accounts receivable for merchandise purchased prior to Talcott's entry into the business. It was at least necessary to check up the accounts and attend to their collection. The method of computing interest, as shown by the accounts, is governed by the tenth paragraph of the contract, which provides that interest shall be charged and credited on the account current "between James Talcott and Daly & Schaefer, Incorporated, at the rate of 6 per cent. per annum." The practice was to render the accounts monthly; interest was charged on the accounts current at the rate of 6 per cent. per annum; the balance on each account was carried forward and started on the next account. The claim is that in this way the interest was compounded. We think this complaint is without just basis. What the parties did was to follow the usual custom of merchants. No objection was made at the time, and appears to be made for the first time in this action, where there is a wholesale condemnation of what we believe to be a fair contract, entered into by the parties with an honest purpose of endeavoring to rehabilitate the firm of Daly & Schaefer, Incorporated, which had become financially embarrassed. The items allowed in payment of attorney's fees and disbursements are fully covered by the contract, which provides for the payment of "all legal expenses and reasonable counsel fees." We think this accounting comes within the rule that, where an account is rendered between business men and no objection is made at the time, it can only be successfully impeached where there is proof of fraud or mistake. Oil Co. v. Van Etten, 107 U. S. 325, 1 Sup. Ct. 178, 27 L. Ed. 319.

The special master concluded that the accounts were rendered in good faith, and found the facts as now contended for by the appellees. His conclusions have received the approval of the District Judge. The rulings have support in evidence, and are satisfactory to us.

The decree is affirmed.