## In re INTERNATIONAL RAW MATERIAL CORPORATION.

### Appeal of WORMSER & CO.

Circuit Court of Appeals, Second Circuit. December 5, 1927.

No. 53.

**1. Usury ☞83—Under New York law, corporation borrowing money may lawfully agree to pay 1½ per cent. per month as commission, in addition to 6 per cent. annual interest.**

There is nothing to prevent corporation borrowing money from making agreement to pay 6 per cent. annual interest on loan and additional sum of 1½ per cent. per month as so-called commission, since New York statute provides that no corporation shall interpose defense of usury.

**2. Usury ☞83—Under New York law neither corporation, those succeeding to its rights, nor sureties may object to agreement for borrowing money because of usury.**

Neither corporation, nor those who may succeed to its rights, nor its sureties may be heard to object to bargain for borrowing of money because of usury, since New York statute provides that no corporation shall interpose such defense, and such statute in effect repeals usury clause, so far as corporation's contracts are concerned.

**3. Bankruptcy ☞324—Corporate contracts to pay excessive interest should not be disturbed, in absence of fraud or duress, by bankruptcy court having custody of collateral security.**

Corporate contracts to pay more than statutory rate of interest should be left to agreement of parties, and not disturbed, in absence of fraud or duress, by court of bankruptcy having custody of fund which is collateral security for performance of agreement.

**4. Banks and banking ☞179—Borrower's agreement to pay legal expenses incurred by bank in enforcing lien against collateral security held legal.**

Agreement by borrower to pay legal expenses incurred by bank in enforcing lien against collateral security or in obtaining advice as to its enforcement *held* not illegal.

**5. Evidence ☞417(9)—Where agreement for loan provided for "additional commissions," parol evidence held admissible to prove rate of such commissions.**

Where contract for loan of money made provision for interest, and for additional com-

pensation as "additional commissions," parol evidence *held* admissible to prove rate of such commissions, notwithstanding provision that parties had embodied all their understandings in writing.

**6. Bankruptcy ☞166(3)—Where creditor was without knowledge of insolvency, agreement that collateral should be security for amount advanced, with interest, held not forbidden (Bankr. Act, § 67d [11 USCA § 107]).**

Agreement, in contract for loan, that collateral should be security for amount advanced, with interest, as well as for payment of commissions and necessary expenses of attorneys, *held* not forbidden by Bankruptcy Act, § 67d (11 USCA § 107), where claimants had no knowledge of borrower's insolvency when they made advances.

Appeal from the District Court of the United States for the Southern District of New York.

In the matter of the International Raw Material Corporation, bankrupt. Petition by Wormser & Co. to review an order of a referee granting a motion made by John N. McCullaugh, as trustee, requiring Wormser & Co. to pay over to the trustee $1,751.75, and denying Wormser & Co.'s claim to retain such sum as attorney's fees, commissions, and interest charges under a lien asserted by them. Reversed.

Wormser & Co., the appellant, loaned money to the bankrupt corporation. The loans were evidenced by collateral notes and were secured by a deposit of warehouse receipts for certain hosiery then owned by the bankrupt. The petition in bankruptcy was filed May 24, 1926, and an adjudication obtained June 7th of that year. At the time of the bankruptcy there were outstanding and in the hands of the appellant 12 notes, aggregating $34,650. A sale of the merchandise covered by the warehouse receipts was held in the District Court, at which the latter was the successful purchaser for the sum of $38,500. After deducting the amount due on the loans, certain charges for interest thereon at 6 per cent., storage, insurance and advertising, there remained in the hands of Wormser & Co. the sum of $3,351.42. The latter paid over to the trustee $1,599.67, and refused to pay over the balance, claiming a right to withhold the same to pay certain so-called service charges of $1,251.75 and attorney's fees of $500. It had been arranged by stipulation at the time of the sale that, in the event of any dispute as to charges made by Wormser & Co. against the fund realized on the sale of the merchandise, such dispute should be presented for adjudication to the referee in bankruptcy. A

motion was brought on before the referee for the disallowance of the items of service charges and attorney's fees, aggregating $1,751.75, and to require Wormser & Co. to pay over such sum to the trustee in bankruptcy. On the hearing of this application it developed that the item of service charges was an additional charge of 1½ per cent. per month, which Wormser & Co. claimed to be entitled to receive on its loans over and above the legal interest which the trustee had conceded to it.

On August 31, 1925, Wormser & Co. entered into a written agreement with the bankrupt, reciting that the bankrupt required from Wormser & Co. advances of money to be evidenced by notes collaterally secured by merchandise to be particularly described in the notes given at the time of the advances, and that the parties desire to evidence in writing the terms and conditions which are to govern all advances "other than as the same are to be embodied in the notes themselves." In addition to other provisions in this agreement, not here pertinent, the contract embodied the following clauses:

"4. In consideration of the commission which the bankers are to receive, they agree to take charge of the storage of said collateral until the satisfaction of their lien thereon; to have such merchandise appraised and inspected from time to time, if advisable; to take such steps as may in their discretion be customarily necessary to safeguard the collateral; to keep accurate and correct books of the transactions between the parties, and to render statement to the client as may be required from time to time in these transactions; to assist the client in the sale of the collateral; to place at the client's disposal the office facilities of the bankers and the services of their employees to the extent necessary in connection with these transactions.

"5. In the event that the client fails to pay the notes upon their respective maturities, the bankers shall be entitled to full additional commission and interest charges at the original rates agreed upon, until the loan is fully paid. The charging of such additional compensation shall not be deemed an extension or modification of any obligation of the client and/or a waiver of any of the rights of the banker hereunder.

"6. The client agrees to reimburse the bankers for all expenses for storage, handling, insurance, trucking, or other outlays incurred in the storage of the merchandise and the maintenance of same, not otherwise specially provided for, which expenses, if, when, and as paid by the bankers, are to be

added to the lien of the bankers secured by the collateral.

"7. It is agreed that the parties have embodied in writing all their understandings, and that no verbal understanding will be, in any manner, deemed to affect, alter, or limit the understanding embodied in writing.

"8. In the event that any proceedings be instituted against the client, predicated upon his insolvency and/or his failure to meet any note upon its due date, or his breach of any obligation arising hereunder, the bankers may employ counsel to advise them and charge the account of the client with attorney's fees actually incurred, or reasonable prospective attorney's fees, and the amount thereof shall be added to the lien of the bankers and be secured by the collateral."

Creditor's Exhibit 2 is a specimen of the collateral notes and the provisions material to this appeal are as follows:

"$4,250.00.          New York, April 8, 1926.

"One month after date, for value received, we promise to pay to the order of Wormser & Co. forty-two hundred fifty dollars, with interest at ——— per cent. per annum, payable at 95 Fifth avenue, New York, having deposited with them as collateral security for the payment of this and any other liability or liabilities of ourselves to said Wormser & Co., due or to become due, or that may be hereafter contracted, the property described in the annexed Schedule F and F$^1$, [the note here goes on to recite provisions for the public or private sale of the collateral and authorization of the holders to become purchasers], and, after deducting the legal or other costs and expenses of collection, sale, and delivery, to apply the residue of the proceeds of such sale or sales so made to pay any, either or all of said liabilities and any other liabilities due or to become due to said Wormser & Co., returning the overplus to the undersigned. * * *"

It is to be noticed that the promissory notes did not recite the rate of interest to be paid, but left a blank space for it. Neither did the agreement between the appellant and the bankrupt, dated August 31, 1925, mention any rate of interest or commissions, and it only refers to these items in article 5 as "additional commission and interest charges at the original rates agreed upon."

Wormser testified before the referee that the bankrupts paid the appellant "at the rate of 1½ per cent. a month commission, and interest at the rate of 6 per cent. per annum."

The referee held that, in view of the provisions of paragraph 7 of the contract of

August 31, 1925, the oral testimony was not sufficient to vary the terms of the written instrument. He also held that section 67d of the Bankruptcy Act (11 USCA § 107) would bar the claim, because the lien of Wormser & Co. was acquired by renewal notes given within four months of bankruptcy, and that in such circumstances the so-called commissions of 1½ per cent. and the attorney's fees, which did not constitute a present consideration within the meaning of that section, could not be allowed. He also followed the Case of Chicago Reed & Furniture Co., 7 F.(2d) 885, where the Circuit Court of Appeals of the Eighth Circuit held that an agreement to pay excessive rates of interest, even when made by a corporation, which could not plead usury, would not be enforced against the fund under the control of the bankruptcy court, because of the unconscionable nature of the contract. The order of the referee directing Wormser & Co. to pay over the sum of $1,751.75 to the trustee in bankruptcy was affirmed by the District Judge, on the ground that parol evidence of an oral agreement to pay excessive rates, amounting to $1,251.75, could not be introduced, and that the attorney's fee of $500 represented no present consideration, and was therefore precluded by section 67d of the Bankruptcy Act (11 USCA § 107) as a lien against the collateral. The attorney's fee represented charges for conferences and advice about the general account, a proposed sale by the lienors, which did not occur, the sale in the District Court, and the purchase at that sale. No proceedings were brought by the attorneys to collect the amounts due. The fee was, however, conceded to be reasonable in amount for the services rendered to Wormser & Co.

Wormser testified that the collateral notes under consideration were "mostly renewals," and it is asserted in appellant's reply brief (at page 7) that "the notes were concededly renewal notes and * * * the principal thereof was concededly advanced before the four months period." While it has not been suggested that the original advances were made within four months before the filing of the petition in bankruptcy, and it may be assumed that such was not the case, the principles applicable to an advance within that period will be discussed, in the event that there should be any error in this assumption.

Davidson, Moses & Sicher, of New York City (James Garfield Moses and George Schreiber, both of New York City, of counsel), for appellant.

David W. Kahn, of New York City, for appellee.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge (after stating the facts as above). Four questions of law are presented upon this record:

(1) Can an agreement by a corporation to pay a rate of interest or a commission in excess of the legal rate be held invalid by a court of bankruptcy, having the custody of a fund which is collateral security for the performance of the agreement, upon the ground that a lien upon that fund for an excessive rate is unconscionable and should not be sanctioned by a court of equity?

(2) Is an agreement to pay legal expenses incurred by a lienor in enforcing his lien, or in obtaining advice as to its enforcement, illegal, irrespective of the Bankruptcy Act?

(3) Was parol evidence admissible to prove what was the rate of the commissions provided for in the contract of August 31, 1925?

(4) Is an agreement providing that collateral shall be security for the amount advanced with interest, as well as for payment of commissions and for necessary services of attorneys, forbidden by section 67d of the Bankruptcy Act?

[1, 2] The contention that an agreement by the bankrupt corporation to pay more than 6 per cent., be it called commissions or interest, was illegal, and should not be enforced against the collateral, is largely based upon the recent decision of the Circuit Court of Appeals of the Eighth Circuit in the case of In re Chicago Reed & Furniture Co., supra. The court there held that, irrespective of the usury law of Illinois, a court of bankruptcy would not enforce an agreement which in that case involved payment from the proceeds of mortgaged property of an amount due for commissions and interest calculated at a rate of over 40 per cent. per annum. Here there seems to be no doubt that the parties agreed among themselves to pay 6 per cent. as interest on the loan and the additional sum of 1½ per cent. per month as a so-called commission. We know of nothing to prevent such an agreement. The New York statute provides that no corporation shall interpose the defense of usury, and this has been held in effect to repeal the usury laws so far as the contracts of corporations are concerned. Neither the corporations, nor those who may succeed to their rights, nor their sureties, are heard to object to their

bargain, either at law or in equity, because of usury. Curtis v. Leavitt, 15 N. Y. 9; Stewart v. Bramhall, 74 N. Y. 85; Gamble v. Queens County Water Co., 123 N. Y. 108, 25 N. E. 201, 9 L. R. A. 527; Hubbard v. Tod, 171 U. S. 474, 19 S. Ct. 14, 43 L. Ed. 246; The Vigilancia (C. C. A.) 73 F. 452.

[3] In Boise v. Talcott, 264 F. 61, this court allowed interest charges of 6 per cent., plus commissions of 10 per cent. for acting as selling agents, together with a discount of 10 per cent. on each loan to the bankrupt. There seems no justification in nullifying the agreement of the parties here, because the interest and commissions which they deliberately arranged were too large to satisfy the ideas of a court. Here, as in other similar cases, the competition of the market fixes rates. The statute has not attempted to control usury contracts made by corporations. Any decision by a court as to what would be a reasonable rate would either have to vary with the kind of security furnished or else be a mere doctrinaire pronouncement. Corporate contracts to pay more than the statutory rate of interest have been, and we believe should be, left to the agreement of the parties, and not disturbed, in the absence of fraud or duress.

[4] The agreement to pay legal expenses is set forth in the contract of August 31, 1925, which provides that "the bankers may employ counsel to advise them, and charge the account of the client with attorney's fees actually incurred, or reasonable prospective attorney's fees, and the amount thereof shall be added to the lien of the bankers and be secured by the collateral." This clause is broader than the usual provision, and in terms covers the services rendered in this case. The fee charged was concededly reasonable in amount.

In Boise v. Talcott, supra, this court allowed compensation to attorneys of the lienor under an agreement for the payment of "all legal expenses and reasonable counsel fees," and we can see no objection to such an allowance, if the services plainly come within the terms of the agreement of the parties, as they seem to have done here.

The decision in Mercantile, etc., Corp. v. Warner Bros. Pictures, Inc., 215 App. Div. 530, 214 N. Y. S. 273 (affirmed without opinion in 244 N. Y. 504, 155 N. E. 873), is not in point as to the effect and general validity of a clause like the present, for there the agreement contained no reference to attorney's fees.

[5] The contract of August 31, 1925, recites that "the parties desire to evidence the terms

and conditions which are to govern the advance, other than as the same are to be embodied in the notes," and it provides at paragraph 5 that, in the event of failure to pay the notes, "the bankers shall be entitled to full additional commission and interest charges at the original rates agreed upon, until the loan is fully paid." No rate for these "additional commissions" is specified in the contract, and "commissions" are not even, referred to in the notes. It is evident that parol testimony was necessary to explain what was the rate of the "additional commissions" agreed upon. The District Judge treated commissions and interest indistinguishably, but the oral testimony in the case did not (though some of the letters between the parties did, Creditor's Exhibit 4), and the written contract specifically differentiated them. We can find no justification in not adopting the same course, particularly when it is argued that our failure to do so would prevent proof of the rate of commissions agreed upon. Where the contract professes to cover terms "other than as the same are to be embodied in the notes," and then provides for the payment of commissions nowhere even mentioned in the notes, the contention that the notes embody the whole contract of the parties would seem to be unfounded.

The contract of August 31, supra, was manifestly incomplete, and the statement to the contrary in article 7 thereof, being plainly erroneous, must therefore be disregarded. In such circumstances there can be no doubt of the necessity of ascertaining by extrinsic evidence what the commissions were to be. While we do not suggest that the omission to fill in the blanks in the notes could not have been supplied by parol evidence, we have no reason to decide this point. Assuming, as the District Judge did, that the statutory rate of interest should be read into the notes, irrespective of the blank, yet the parties had agreed upon payment of *commissions* in a contract defining their relations, and had nowhere indicated in writing what those commissions were to be. The cases of Chelsea Exchange Bank v. Warner, 202 App. Div. 499, 195 N. Y. S. 419, Furstenfeld v. Furstenfeld, 152 Mo. App. 726, 131 S. W. 359, and Haas v. Commerce Trust Co., 194 Ala. 672, 69 So. 894, all relate to the effect upon interest-bearing notes of a blank left for the insertion of the rate, and have nothing to do with a case like the present, where a contract is involved that could not be made complete by any implication of law, but must be supplemented in its terms by extrinsic evidence.

[6] The foregoing discussion relates only to the validity of the lienor's agreement, irrespective of section 67d of the Bankruptcy Act, which provides that:

"Liens given or accepted in good faith and not in contemplation of or in fraud upon this act, and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall to the extent of such present consideration only, not be affected by this act."

The above provision was apparently inserted in the act to save liens to the extent indicated, which might be thought invalid under other provisions of law.

Mr. Remington, in his treatise on the Bankruptcy Law (3d Ed., § 1944), explains the words "to the extent of such present consideration only" added to section 67d by the amendment of 1910, by saying that "some of the decisions had gone to the extent of holding an entire lien valid, if any portion of it were given on present consideration, thus affording a ready means of defeating the Bankruptcy Law in reference to preferential liens."

The amendment, therefore, was merely to avoid the erroneous decisions above mentioned, and really added nothing to the words "present consideration" already appearing in section 67d. No words of the clause purport to invalidate any lien, and to hold that it has that effect as to all contracts, except to the extent of the consideration advanced, would be to render transfers by way of paying past indebtedness, though made to persons having no "reasonable cause to believe that the * * * transfer would effect a preference," voidable at the instance of a trustee.

It was distinctly held by the Circuit Court of Appeals of the Eighth Circuit, in C.der v. Arts (C. C. A.) 152 F. 943 (affirmed 213 U. S. 223, 29 S. Ct. 436, 53 L. Ed. 772, 16 Ann. Cas. 1008), that a mortgage taken within the four months period by a creditor was valid, when the creditor had no reasonable cause to believe that a preference was intended. Judge Sanborn said that " * * * mortgages or transfers, to secure pre-existing debts made within four months of the filing of a petition in bankruptcy, are legal and valid, unless voidable by reason of some provision of the bankruptcy law, or of some state law, notwithstanding the fact that they create preferences. They are valid unless avoided; not void unless validated. The provision of section 67d, that liens for present considerations given and accepted in good

faith shall not be affected by the bankruptcy law, does not strike down or render voidable those given and accepted for past considerations. * * * " See, to the same effect, Stedman v. Bank of Monroe (C. C. A.) 117 F. 237.

In Boise v. Talcott, 264 F. 61, we allowed both commissions and attorney's fees for collecting pledged accounts, where the agreement was made more than four months before bankruptcy. In Van Iderstine v. National Discount Co., 174 F. 518, we upheld an agreement pledging accounts for advances made on the eve of bankruptcy, where both a commission of 5 per cent. was charged on the advances and attorney's fees were charged for collection of the accounts. It is true that the transaction was attacked on the ground that it was in fraud of creditors, and not because of the provisions of section 67d; but the bill by the trustee to recover from the money lender was finally ordered dismissed in toto by the Supreme Court. Van Iderstine v. National Discount Co., 227 U. S. 575, 33 S. Ct. 343, 57 L. Ed. 652. It was held that there was no intent to defraud creditors, and, that being absent, the transaction stood.

We have discovered no case which has allowed any relief against a lender who was not seeking to defraud creditors, except In re Murcott Steel Products Co. (C. C. A.) 294 F. 84, and there only where the transaction occurred within four months and the lienor had knowledge of the insolvency of the borrower. In that case a money lender had advanced $1,200 to an insolvent two weeks before bankruptcy, and taken back a chattel mortgage for $1,500. The mortgage contained the following clause: "And out of the moneys arising therefrom [the sale] to retain and pay to the party of the second part the said moneys above mentioned, with interest and all charges touching the same and the keeping and sale thereof, rendering the overplus, if any, unto it or its executors, administrators, successors and assigns."

The mortgagee had full knowledge of the fact that the corporation was unable to meet its indebtedness. He sought to recover out of the proceeds of the mortgaged property (a) $1,200 and interest; (b) the difference between the amount actually advanced and the face of the mortgage (to wit, $300) as a bonus for the loan; (c) counsel fees as a charge provided for in the mortgage. He was allowed to recover $1,200 and interest, but denied the $300 bonus, because of the provisions of section 67d of the Bankruptcy Act, and was not allowed attorney's fees be-cause the language of the mortgage could not be construed as covering such an item.

In view of the purposes of section 67d, to which we have adverted, whatever may be said of the disallowance of the bonus in the Murcott Case, or of the rationale of the decision, that case is confined to transactions where the lienor has reason to believe that the borrower is insolvent, and where the lien is obtained within four months of the filing of the petition in bankruptcy. In Boise v. Talcott, supra, we allowed commissions and legal expenses where the lien was created prior to four months, and in Van Iderstine v. National Discount Co., supra, the same items were not disturbed, where the lien was created only four or five days before the filing of the petition in bankruptcy, and the lender was not shown to have had any knowledge of the bankrupt's insolvency, and no intention of the latter to defraud creditors was established.

In the case at bar, the original loans seem to have been made before the four months period; but, if that was not the case in respect to all of the advances, no proof was offered to show that Wormser & Co. had knowledge of the insolvency of the International Raw Material Corporation when they made the advances. Therefore the claim of Wormser & Co., both as to interest, commissions, and counsel fees, should be allowed, and the order of the District Court is reversed accordingly.