## P. R. MALLORY & CO., Inc., v. GRIGSBY-GRUNOW CO. *

## MANUFACTURERS' FINANCE CO. v. McKEY.

## No. 5170.

Circuit Court of Appeals, Seventh Circuit.

June 19, 1934.

Rehearing Denied Oct. 1, 1934.

Edward Rothbart and Norman M. Peterson, both of Chicago, Ill., for appellant.

Thomas L. Marshall and Le Roi J. Williams, both of Chicago, Ill., for appellee.

Before ALSCHULER, SPARKS, and FITZHENRY, Circuit Judges.

SPARKS, Circuit Judge.

This appeal arises out of a controversy between the receivers of the Grigsby-Grunow Company, an Illinois corporation organized for the purpose of manufacturing certain merchandise, and appellant, a Finance Company incorporated in Delaware, as to the balance due from the receivers under a certain contract entered into between the two parties.

On October 5, 1933, the Grigsby-Grunow Company, hereafter referred to as the Company, entered into the contract in question, with appellant, according to the terms of which the latter agreed to purchase from the former such accounts receivable and trade acceptances as were acceptable to it. These "accounts" evidenced sales and deliveries of personal property usually dealt in by the Company. The rate of interest agreed upon was 10%, not upon the balance of cash advance remaining from time to time, but upon the aggregate amount of accounts assigned to appellant as security for the advances. The contract also provided that the appellant should furnish certain so-called services to the Company, described by appellant as follows: "Upon request, to furnish by mail to the company its credit information in hand about the customers of the company; have its auditors give to the company the report of each examination provided for in the contract, with full information and advice as to the most desirable method of keeping the books, records and accounts of the company; pay for all accounting, postage and credit investigation of accounts purchased or offered for purchase under the contract and upon request give financial and business advice; obtain and have on hand at all times sufficient funds to make prompt remittance to the company for all acceptable accounts with-

in the limits agreed upon in the contract; supply all forms needed for the assignment of accounts; place its credit department and collection department at the disposal of the company and permit the company to submit any of its sales contracts with its customers to the general counsel of appellant for advice and opinion as to the form and legality thereof."

It was stipulated by the parties that the rate of compensation or interest fixed by the contract aggregated a minimum of 20% per annum, and that prior to the appointment of the receivers it was the custom of the parties for the Company to assign and deliver to appellant the schedules of accounts whereupon appellant would check the credit risk and, if satisfied with the accounts, transmit its check for 50% of the face value of the accounts to the Company. Then as the latter received payment from its customers it transmitted each payment in its original form to appellant, who thereupon endorsed and deposited the remittances and sent the Company the balance of the face value of the accounts not already advanced, less any deductions.

Since the appointment of the receivers, November 24, 1933, no further accounts receivable have been assigned to appellant, nor has any of the money collected on the accounts previously assigned been paid over except under order of the court, in accordance with which the entire amount advanced by appellant to the Company together with interest at the minimum contract rate of 20% up to November 24, has been repaid by the receivers.

On November 29, 1933, appellant filed an intervening petition in the receivership proceedings asking that title to the accounts be declared in it, with the right to hold them until the receivers paid the unpaid balance plus service charges, attorneys' fees, costs and expenses in accordance with the contract provisions. The compensation claimed was $4,-394.48 from November 24 to December 29, which amount was $1,296.26 more than the 20% charged up to November 24. In addition, attorneys' fees of $7,800 were claimed, the amount being computed on the amount of accounts outstanding in the hands of appellant rather than on the amount due. The following testimony of a member of the Bar was introduced with reference to the reasonableness of the fee claimed: "From the facts given to me and basing it on the amount involved, being $261,000, I would say that 3% of that, $7800 would be reasonable attorneys' fees on a 15 day basis."

Appellant refused to follow its practice of returning to the Company whatever accounts it held over twice the amount due from the Company on the unpaid balances, and insisted upon following the strict letter of the contract which did in effect permit the retention of the entire amount of accounts receivable, and the collection of interest upon them at the contract rate of 10% until the entire loan was paid off. As to this point it was stipulated that the contract provided that compensation or interest should be 83½% of 1/30 of 1% of the net face amount of accounts for each day from date of purchase by appellant until paid to it, and that this amounted to a rate of 10% per annum upon the net face amount of accounts, as distinguished from cash invested for each day until the advances were realized. The effect of this would be to entitle appellant to interest at an average of over 28% from the date of receivership proceedings, and of 250% during the latter part of that period. It was shown that there was never any question but that appellant would receive back the balance on its loan, and that the receiver offered to pay interest at the rate of 7% on the unpaid balance. On the ground that its demand for the contract rate, and for $7800 attorneys' fees alleged to be incurred in the proceedings was contrary to the principles practiced in a court of equity, the District Court dismissed the intervening petition.

The first point urged by appellant is that the contract was one for service and not merely for the lending of money, and that the court therefore has no right to inquire into the reasonableness of the compensation provided for by the parties. We do not agree that these so-called services were sufficient to take the contract out of the category of a loan and classify it as a contract for service. See Home Bond Co. v. McChesney, 239 U. S. 568, 36 S. Ct. 170, 60 L. Ed. 444; National Discount Company v. Evans (C. C. A.) 272 F. 570; Le Sueur v. Manufacturers' Finance Co. (C. C. A.) 285 F. 490; In re Grand Union Co. (C. C. A.) 219 F. 353; Chase & Baker Co. v. National Trust & Credit Co. (D. C.) 215 F. 633; In re Gotham Can Co. (C. C. A.) 48 F. (2d) 540. Under the principles laid down in these cases, we think that the transaction in question is properly classified and treated as a loan.

Appellant contends, however, that even though the transaction may be considered in the nature of a loan, that fact does not do away with its right to collect interest at the rate reserved by the contract for the reason

that under the Illinois statute on Interest, as amended in 1925, Smith-Hurd Rev. St. Ill. 1933, c. 74, § 4, not only is a corporation not allowed to interpose a defense of usury to an action on a contract, but it is specifically permitted to contract for interest at any rate it may determine, and to pay at that rate. In accordance with this, appellant argues that it is entitled not only to its interest at the contract rate, but also to its attorneys' fees rendered necessary in the collection of its interest. It finds substantial support for this argument in certain cases cited by it,[1] the strongest of which for its purposes is In re International Raw Material Corporation, 22 F.(2d) 920, 923, decided by the Circuit Court of Appeals for the Second Circuit. In that case the Court of Appeals reversed the decision of the District Court disallowing the claim of a Finance Company based upon a contract providing for interest at the rate of 6% on the amount loaned, plus a commission of 1½% a month. In reversing the District Court which had based its decision on the authority of a decision of this court, In re Chicago Reed & Furniture Co., 7 F.(2d) 885, the court said, "There seems no justification in nullifying the agreement of the parties here, because the interest and commissions which they deliberately arranged were too large to satisfy the ideas of a court. Here, as in other similar cases, the competition of the market fixes rates. * * *" In allowing the disputed claims in that case the court also allowed attorney fees of $500 which it stated were "concededly reasonable." In the Chicago Reed Furniture Case, this court refused to allow against a bankrupt estate a claim for a $300 commission on a loan of $1700 on the ground that, regardless of the state usury statute and its inapplicability in the case of a corporation, a court of equity was not compelled to render its aid in the enforcement of a contract which provided for a rate of interest exceeding 40% per annum.

We concede that the International Raw Material Corporation Case is quite similar in many respects to the case at bar. They do differ in the amount of attorneys' fees claimed, and in the fact that in the instant case, the Finance Company is attempting to charge the receivers a rate considerably higher than the rate in fact used between the contracting parties, which was the minimum rate reserved by the contract. It is of course idle to speculate as to the motives of the parties, and yet it seems possible that the Finance Company may have been influenced in charging the lowest rate rather than the higher one it could have charged against the Company from the inception of the contract because of the possibility of its cancellation under one of its provisions allowing such cancellation at any time as to future transactions upon written notice. The insistence of appellant upon its claim for the full rate of interest plus attorneys' fees at a preposterous rate, when it appeared that there was no more business to be done under the contract because of the receivership of the Company savors too much of the exaction of the pound of flesh from the creditors of the insolvent company to be enforcible in a court of equity. If this case arose in an action at law between the original parties it may well be that the court could not refuse to enforce the contract according to its strictest terms. But where the creditor goes beyond the practice of the parties under the original contract and tries to enforce rights never asserted against the other contracting party, and in addition tries to collect counsel fees exceeding 177% of the maximum amount claimed against the receiver who is attempting to salvage the assets for the benefit of the other creditors who have a substantial interest in the estate of the debtor, we can not feel that a court of equity is any place for him to press his demands. As stated in National Fire Insurance Co. v. Thompson, 281 U. S. 331, 50 S. Ct. 288, 291, 74 L. Ed. 881, "Courts of equity frequently decline to interfere on behalf of a complainant whose attitude is unconscientious in respect of the matter concerning which it seeks relief." We can see no reason under the circumstances of this case for overruling the principle laid down in the Chicago Reed Furniture Case, supra, in favor of that enunciated in International Raw Material Corporation, supra.

Decree affirmed.

---

[1] Estes v. E. B. Estes & Sons (D. C.) 24 F.(2d) 756; In re Lutz & Schramm Co. (D. C.) 235 F. 970, 38 A. B. R. 351; In re International Raw Material Corporation (C. C. A.) 22 F.(2d) 920; In re Gotham Can Co. (C. C. A.) 48 F.(2d) 540; Ramsey v. Marlin Firearms Corporation (D. C.) 14 F.(2d) 314. See also In re Bernard & Katz (C. C. A.) 38 F.(2d) 40, not cited by appellant.