### In re KASHMIR REFINISHING CO., Inc.*
### No. 31347.

District Court, E. D. New York.
July 23, 1937.

Smyth & Smyth, Jr., of New York City (Walter J. Fried, of New York City, of counsel), for petitioner Charles Karsh.

Herman G. Robbins, of Brooklyn, N. Y., for trustee.

GALSTON, District Judge.

Charles Karsh, the petitioner, seeks a review of an order of the referee, made June 22, 1937. The order to be reviewed declared a chattel mortgage held by the petitioner to be a valid lien against the chattels therein described to the extent of only $1,900.

On July 31, 1936, the bankrupt executed and delivered to Charles Karsh a chattel mortgage in the sum of $3,000.

*Order modified 94 F.2d 652.

On October 29, 1936, an involuntary petition in bankruptcy was filed against the bankrupt and it was adjudicated bankrupt on its consent. The receiver in bankruptcy, pursuant to an order of this court, sold the fixtures and machinery of the bankrupt free and clear of the lien of this chattel mortgage. The validity of the chattel mortgage was left for determination with the proviso that the net proceeds realized from the sale be held in a separate fund pending the determination of the validity of the mortgage. The sale yielded a fund in excess of the amount claimed under the mortgage.

The referee found that on August 3, 1936, the mortgagee advanced to the bankrupt $3,000, but that $600 thereof was immediately returned to Karsh as a bonus. The referee then concluded that the mortgage was effective only as to the $2,400 actually advanced.

At the time of the making of the loan it appears that the bankrupt was in financial difficulties. There were two unpaid judgments against it for upwards of $1,400. The referee was of opinion that an inquiry on the part of the mortgagee would have disclosed the financial condition of the bankrupt.

Constantine, president of the bankrupt, was a stranger to Karsh and was introduced by a broker. It appears that at the time the transaction was entered into Karsh had an appraisal made of the machinery. He also had records searched to ascertain the existence of prior liens. At the time the loan was effected Karsh had no actual knowledge that the bankrupt was insolvent.

On default, it became necessary for the mortgagee to institute a replevin action to retain possession of the chattel covered by the mortgage. The mortgage provided: "It is hereby specifically understood and agreed that if the party of the second part or his (its) assigns retains counsel for the purpose of collecting any moneys which may be due under the mortgage, or to recover the mortgaged property or to protect his (its) interest therein by reason of the happening of any of the contingencies set forth in this mortgage, that then and in that event the party of the first part herein agrees to pay counsel fee, the amount of which is hereby expressly fixed at a sum which shall be equal to 15% of the entire balance unpaid under this mortgage whether due or not, and such counsel fee shall be added to the indebtedness secured by this mortgage and shall and hereby is made part of the mort-

gage debt, and shall become an additional lien on said mortgaged chattels secured by this mortgage, and payable on demand with interest anything in this mortgage to the contrary notwithstanding, said counsel fee is in no event to effect but is to be paid in addition to statutory court costs."

Accordingly Karsh's claim against the funds is made up of the following items:

| | | |
|---|---|---|
| 1. | Balance due on chattel mortgage .................... | $2,500.00 |
| 2. | Interest to March 1, 1937.... | 87.50 |
| 3. | Attorneys' fees at 15%...... | 375.00 |
| 4. | Cost of replevin bond....... | 60.00 |
| 5. | Sheriff's filing fees.......... | 10.00 |
| | Total ................ | $3,032.50 |

The referee's finding was that the mortgage was a valid lien to the extent of $1,900 or, to state it otherwise, to the extent of $2,400, less the $500 that had been repaid on the loan. In the disallowance of the other items, he relies on Irving Trust Co. v. Brevoort Security Corporation (D.C.) 4 F. Supp. 903. But the facts at bar are distinguishable from the facts of that case. That was an action to set aside a fraudulent conveyance by the bankrupt. Total accounts in the sum of $18,000 were sold for $5,000, but the lender admitted knowledge that the bankrupts had pressing obligations, that they were unable to get cash, needed money to pay bills, had dealt with another finance company on an unsatisfactory basis, and that the bankrupts were in difficulties with their bank. It was there held the transfer was made with the intent and purpose to delay and defraud creditors and that the purchase was not in good faith for a present fair consideration. No such facts appear in this case.

The referee relies also on In re Murcott Steel Products Co. (C.C.A.) 294 F. 84. It was there held that, where a chattel mortgagee had full knowledge that the corporation was unable to meet its indebtedness when he advanced $1,200 to it under a mortgage covering $300 as a bonus, only $1,200 would be allowed in view of Bankruptcy Act, § 67d (as amended, 11 U.S.C.A. § 107(d). In the case at bar the mortgagee did not have actual knowledge of the bankrupt's insolvency. The distinction between actual knowledge and imputed knowledge is an important one. See Van Iderstine v. National Discount Co. (C.C.A.) 174 F. 518. See, also, Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 55 S.Ct. 444, 79 L. Ed. 982.

More closely applicable is In re International Raw Material Corporation (C.C. A.) 22 F.(2d) 920, 925. There it was said: "In the case at bar, the original loans seem to have been made before the four months period; but, if that was not the case in respect to all of the advances, no proof was offered to show that Wormser & Co. had knowledge of the insolvency of the International Raw Material Corporation when they made the advances. Therefore the claim of Wormser & Co., both as to interest, commissions, and counsel fees, should be allowed, and the order of the District Court is reversed accordingly."

And distinguishing the Murcott Case the opinion also held: "In view of the purposes of section 67d, to which we have adverted, whatever may be said of the disallowance of the bonus in the Murcott Case, or of the rationale of the decision, that case is confined to transactions where the lienor has reason to believe that the borrower is insolvent, and where the lien is obtained within four months of the filing of the petition in bankruptcy. In Boise v. Talcott [(C.C.A.) 264 F. 61] supra, we allowed commissions and legal expenses where the lien was created prior to four months, and in Van Iderstine v. National Discount Co., supra, the same items were not disturbed, where the lien was created only four or five days before the filing of the petition in bankruptcy, and the lender was not shown to have had any knowledge of the bankrupt's insolvency, and no intention of the latter to defraud creditors was established." See, also, In re Bernard & Katz (C.C.A.) 38 F.(2d) 40, which re-affirms In re International Raw Material Corporation (C.C.A.) 22 F.(2d) 920.

Accordingly, I must reach the conclusion that the order appealed from should be reversed, and it should be noted that the lien in the amount of $2,500, with interest from July 31, 1936, counsel fees of $375, and disbursements of $70, should attach to the proceeds of the receiver's sale.

Settle order on notice.