## INGRAM v. LEHR.
### No. 6086.

Circuit Court of Appeals, Ninth Circuit.
June 9, 1930.

Wm. B. Layton and N. Ral. Alber, both of Portland, Or., for appellant.

Louis V. Lundburg and B. A. Green, both of Portland, Or., for appellee.

Before RUDKIN, DIETRICH, and WILBUR, Circuit Judges.

DIETRICH, Circuit Judge.

In March, 1928, William Hockinson, then engaged in the business of manufacturing sausage in Portland, Or., was adjudicated a bankrupt. Soon thereafter the appellee, August Lehr, presented a general claim for $8,333.34, which later, by amendment, he converted into a secured claim. For some reason which does not clearly appear it was not acted upon until the 3d day of January, 1929, upon which date the referee entered an order disallowing it entirely. Upon the claimant's petition for review it was subsequently allowed as a general claim, and from this order of allowance the trustee prosecutes this appeal.

It seems that for approximately fifteen years prior to his bankruptcy the bankrupt was engaged in the meat and sausage business in Portland, and during a considerable portion of that time the claimant was in his employ. Being in need of additional funds

for the business, on the first day of January, 1924, he took in as partners his brother, A. J. Hockinson, and the claimant, the latter contributing to the business substantially the amount of his present claim. Dissension arose and early in September, 1925, the bankrupt brought a suit for the purpose of dissolving and winding up the partnership, but before any action was taken therein a compromise settlement was made, as a result of which the partnership was dissolved, the brother ceased to have any connection with the business, the bankrupt executed to the claimant his promissory note for the amount of the claim in controversy, and the two agreed that the claimant should continue as a sausage maker in the employ of the bankrupt at a salary of $75 per week. This agreement was in writing and contained some provisions suggesting a lien or preferred right in favor of claimant on account of the note, as against other creditors of the bankrupt, but correctly, we think, both the referee and the district judge held that claimant had no lien or preferential right. The note, upon which the claim is predicated, was for the principal sum of $8,333.34, was dated September 14, 1925, was payable December 31, 1928, and bore interest at the rate of 6 per cent. per annum.

There is some contention made by the trustee that the transaction was a mere sham, and that claimant continued to be a partner in the business, but the evidence discloses no substantial support for this view.

■ One of the grounds upon which the referee based his disallowance of the claim was that the note was void for want of consideration. This upon the theory that at the time the partnership was dissolved and the note given the partnership was wholly insolvent. There is a serious question whether in fact insolvency existed at that time, but, however that may be, the note was executed pursuant to and as a result of a compromise between the bankrupt and the claimant, and hence there was a sufficient consideration.

■ The principal contention made by the trustee is that at the time of the dissolution it was agreed between the claimant and the bankrupt that the written agreement of settlement should be withheld from public record and that both parties would keep secret the nature of the settlement and the existence of the promissory note, in order that the bankrupt might have credit with business concerns with whom he dealt. This contention the referee sustained, but the District

Court denied. Upon the facts in respect thereof the testimony is substantially conflicting, and the general rule undoubtedly is that where the findings of fact of a referee, who has heard the witnesses testify, are based upon highly conflicting testimony, the district judge, upon petition for review, ought not to disregard such findings. Ohio Valley Bank Co. v. Mack (C. C. A.) 163 F. 155, 24 L. R. A. (N. S.) 184; Wilson et al. v. Continental Bldg. & L. Ass'n (C. C. A.) 232 F. 824; Bennett Grossberger v. Goodrich Rubber Co. (C. C. A.) 8 F.(2d) 964.

But, while in harmony with this rule, we are inclined to hold that it was error to reject the referee's finding that such was the understanding between the parties, that understanding does not in itself require a disallowance of the claim, which is otherwise valid and provable in bankruptcy. Bankruptcy proceedings are in equity and undoubtedly a claim is subject to the general rule that "he who has done iniquity shall not have equity." But we do not find in the understanding here the quality of moral obliquity; it might have operated as a constructive fraud, but we do not think actual fraud was intended. To the contrary, it would seem that both parties were of the opinion that if the business could be carried forward by Hockinson he would be able to make a success of it and ultimately pay all of his debts, both those which then existed and those he might incur. Assuming that hope or expectation to have been a reasonable one, the plan was not inherently fraudulent. Nor for the benefit of others contemplating giving Hockinson credit was the claimant under any legal obligation to make public the fact that Hockinson owed him. Crowder v. Allen-West Comm. Co. (C. C. A.) 213 F. 177, 183, 184. If subsequently, as there is some testimony tending to show, the claimant, by stating that he had no claim, affirmatively deceived one who was considering the matter of extending credit to Hockinson, the claimant might be estopped from asserting his claim as against that creditor. But even so, other creditors could not invoke the defense; the claim might still be provable against the estate and be good as against all other creditors. Such testimony as there was upon this point relates to only one creditor and if, without so deciding, we assume that the trustee can, on behalf of a single creditor, assert that species of defense in a proceeding for the allowance of a claim, we do not think the evidence was sufficiently comprehensive and definite to warrant a specific adjudica-

tion of the relative rights of the two parties in the estate or an order directing in what manner distribution should be made to them.

Affirmed.