67 F.2d 792 (1933)
In re BOWMAN HARDWARE & ELECTRIC CO.
MILLER
v.
BORTON.
No. 4961.
Circuit Court of Appeals, Seventh Circuit.
November 29, 1933.
Rehearing Denied January 15, 1934.
*793 W. A. Doss and C. E. Corbett, both of Monticello, Ill., for appellant.
Carl S. Reed and E. J. Hawbaker, both of Monticello, Ill., and Frank King, of Indianapolis, Ind., for appellees.
Before ALSCHULER, EVANS, and SPARKS, Circuit Judges.
EVANS, Circuit Judge (after stating the facts as above).
There is but one question presented by this appeal. Was appellant's conduct such as to justify the court in postponing his participation in the assets of the bankrupt estate until all other creditors were paid?
On oral argument the contention was made that the proof failed to show the exact amount of appellant's claim and that it included usurious and other illegal charges. The record does not support the argument.
*794 In its objections to appellant's claim, the objector stated:
"That at the time the bankrupt commenced their business they became indebted to one A. C. Miller of the City of Monticello, * * * and that said indebtedness existed * * * at all times thereafter * * * but in increasingly large amounts, the greater portion, if not all of which, became evidenced by judgment notes upon which a judgment or judgments were confessed * * * on * * * March 1st, 1932, in the name of T. W. Doss * * * and the real interest therein and in said note or notes in truth and in fact belonging to the said A. C. Miller, as the real party in interest."
In the face of this admission, which the objecting creditor made for itself and all other creditors, it cannot now well challenge the validity of appellant's claim. The evidence of both Miller and Bowman thoroughly confirmed this admission.
We are therefore confined to the study of the question, Was appellant estopped to assert his claim on a parity with other creditors?
The fact basis for an affirmative answer to this question is limited to Miller's alleged request, and bankrupt's acquiescence in the request, that the loan by him to bankrupt be kept a secret. The evidence abundantly establishes the making of the request of the bankrupt and that it was respected by Bowman. The bankrupt's books did not reveal any indebtedness to appellant, nor did Bowman ever reveal Miller as a creditor or the debt due Miller as bankrupt's liability.
It also appeared that bankrupt made no financial statements to any of its creditors, and of course no creditor relied on any such statement. Nor does it appear that any creditor, save only one  Van Camp Company, was induced to extend credit because bankrupt's obligations did not include a debt to Miller.
This creditor, through its credit manager, testified that it had no knowledge of the indebtedness to appellant; that at one time it examined the books of the bankrupt; that Bowman denied to it the existence of any other indebtedness; that had it known of the indebtedness it would not have extended credit to the bankrupt.
This examination was made in the fore-part of August, 1931. At that time bankrupt was indebted to Van Camp Company to the extent of $300, which was shortly paid. At the time of the adjudication the indebtedness was about $800.
Later, a collector for this company called on bankrupt and presented the creditor's bill. Bowman refused to tell him anything about the sums bankrupt owed. The collector then went to the bank, which in turn called Bowman over and asked him to give a statement to the creditor as to what bankrupt owed. Bowman refused, saying, "I don't have to get merchandise from them, I will pay them." Subsequently, $400 was paid on the account.
It is shown that Bowman never gave any statement of bankrupt's financial condition to any one, and the books of account which it kept included only transactions with its customers and the wholesale merchants and did not include the company's personal loans. No other creditor either asked it for a statement or examined bankrupt's books.
Upon this record we are satisfied that no creditor, save Van Camp Company, can validly object to appellant's claim or assert a right to preferential payment over it.
Before a general creditor's claim against the bankrupt may be disallowed or its status lowered, it must appear that said creditor has been guilty of some act involving moral turpitude or some breach of duty or some misrepresentation whereby other creditors were deceived to their damage. In the instant case the absence of any evidence showing that other creditors were damaged by appellant's action, conceding for the moment that such action amounted to fraud, is fatal to the asserted priority of all other general creditors save Van Camp Hardware and Iron Company. Ingram v. Lehr (C. C. A.) 41 F.(2d) 169, 170; Wallace v. Ohio Valley Bank (C. C. A.) 2 F.(2d) 53, 56. In Ingram v. Lehr, the court said:
"But, while in harmony with this rule, we are inclined to hold that it was error to reject the referee's finding that such was the understanding between the parties, that understanding does not in itself require a disallowance of the claim, which is otherwise valid and provable in bankruptcy. Bankruptcy proceedings are in equity and undoubtedly a claim is subject to the general rule that `he who has done iniquity shall not have equity.' But we do not find in the understanding here the quality of moral obliquity; it might have operated as a constructive fraud, but we do not think actual fraud was intended. To the contrary, it would seem that both parties were of the opinion that if the business could be carried forward by Hockinson he would be able to make a success of it and ultimately pay all of his debts, both those which then existed and those he might incur. Assuming that *795 hope or expectation to have been a reasonable one, the plan was not inherently fraudulent. Nor for the benefit of others contemplating giving Hockinson credit was the claimant under any legal obligation to make public the fact that Hockinson owed him. Crowder v. Allen-West Comm. Co. (C. C. A.) 213 F. 177, 183, 184. If subsequently, as there is some testimony tending to show, the claimant, by stating that he had no claim, affirmatively deceived one who was considering the matter of extending credit to Hockinson, the claimant might be estopped from asserting his claim as against that creditor. But even so, other creditors could not invoke the defense; the claim might still be provable against the estate and be good as against all other creditors. Such testimony as there was upon this point relates to only one creditor and if, without so deciding, we assume that the trustee can, on behalf of a single creditor, assert that species of defense in a proceeding for the allowance of a claim, we do not think the evidence was sufficiently comprehensive and definite to warrant a specific adjudication of the relative rights of the two parties in the estate or an order directing in what manner distribution should be made to them."
The Van Camp Hardware Company's claim must be considered separately because it stands on a different fact basis. Its preference over appellant's claim is doubtful. The alleged estoppel of appellant as to it is predicated upon this showing: Appellant asked the debtor not to make known the existence of its debt. Bankrupt acquiesced. Answering an inquiry made by Van Camp's credit man, bankrupt denied the existence of any indebtedness to any one. Van Camp Hardware Company relied upon such misstatement by bankrupt and extended credit for which there was an unpaid balance at the date of bankruptcy. Bankrupt made its false statement because appellant had asked it not to make the loan public. We accept as true the testimony of Van Camp's credit man because the referee so found, although it was disputed by Mr. Bowman. On this assumption, was appellant estopped as against Van Camp?
The fact strongly stressed by appellees, that appellant asked the debtor not to make known the existence of its debt, does not impress us as necessarily indicative of any fraudulent scheme, nor did it evidence any breach of duty by the lender. There are many legitimate reasons why a loaner or a borrower, or both, should prefer not to have a loan made public. In the instant case, appellant was engaged in business in a community where there were numerous hardware stores when bankrupt entered the field. It is quite apparent that he sought to avoid offense to other merchants, which might arise, in case they learned of his helping a competitor enter the business.
Moreover, he advanced in the first instance only $3,000. Other loans were made as the business grew and the demand for capital increased. Surely there was nothing fraudulent in loaning money to a debtor to purchase merchandise from the wholesale houses.
The substantial basis of estoppel is that bankrupt not only did not reveal the indebtedness, but went further and denied the existence of such indebtedness. But was appellant bound by such misstatements of bankrupt?
Viewing the entire testimony and giving such weight to the findings of the referee as we are required to do, we conclude that bankrupt's misstatement to Van Camp Company was induced by its agreement with appellant not to reveal the latter's loan, and appellant is bound by the consequences of bankrupt's misstatement. Appellant's claim must be subordinated to that of Van Camp Hardware Company.
The order of the District Court is reversed, with directions to allow appellant's claim on an equal footing with other unsecured creditors save only that the trustee shall pay to Van Camp Company out of appellant's distributive share a sum equal to the balance of Van Camp Company's claim, after deducting its dividend.
The costs in this court shall be borne equally.