## NEEDHAM v. BICKFORD.

## BICKFORD v. NEEDHAM.

### Nos. 3069, 3070.

Circuit Court of Appeals, First Circuit.

April 28, 1936.

Joseph P. Sullivan, of Boston, Mass. (Hurlburt, Jones & Hall, of Boston, Mass., on the brief), for Bickford, receiver.

Walter Powers, of Boston, Mass. (Sherburne, Powers & Needham, of Boston, Mass., on the brief), for Needham, receiver.

Burnham, Bingham, Pillsbury, Dana & Gould, and Laurence M. Lombard, all of Boston, Mass., amici curiæ.

Before BINGHAM, WILSON, and MORTON, Circuit Judges.

MORTON, Circuit Judge.

These are cross-appeals from a decree of the District Court allowing in the sum of $647,000 the claim of the United Investment Assurance Trust represented by its receiver, Mr. Bickford, against the Founders Securities Trust represented by its receiver, Mr. Needham, but postponing payment thereof until the claims of all ordinary creditors of Founders Trust shall have been paid. The receiver of the Founders Trust has appealed from the allowance of the claim, and the receiver of the United Trust from the postponement of it. The complicated facts are stated in an excellent report by George R. Farnum, Esq., as special master.

One Richards, a bankrupt who later was convicted and sentenced for fraud in respect to these trusts, conceived the idea of establishing a "system" of investment trusts. The two here in question were organized by him and his associates in pursuance of this plan. Richards was the dominating factor in both trusts. The persons who managed them did what he requested. Because of mismanagement each trust was put into the hands of a receiver. Investigation disclosed that securities of the United Trust to the amount of over $647,000 had been fraudulently diverted into the Founders Trust. This misappropriation forms the basis of the claim which was allowed.

The questions are: (1) Whether the United Trust may prove against the Founders Trust for the value of these securities; and (2) if so, whether its claim should be ranked with claims of general creditors, or whether payment of it should be postponed until ordinary claims had been paid.

As to the first point: We are not dealing with a single swindle carried out by various devices, in which case on liquidation of the swindle all victims should be treated alike without regard to the particular device by which they had been victimized. In the present case no such

state of facts is shown. The two trusts were separate enterprises which are being separately liquidated. The account between them can be and has been stated. "The mere fact that a party is obliged to go into a federal court of equity to enforce an essentially legal right arising upon a contract valid and unassailable under controlling state law does not authorize that court to modify or ignore the terms of the legal obligation upon the claim, or because the court thinks, that these terms are harsh or oppressive or unreasonable." Sutherland, J. Manufacturers' Finance Co. v. McKey, 294 U.S. 442, 448, 55 S.Ct. 444, 447, 79 L.Ed. 982. In that case a claim based on an extremely oppressive contract was made by the finance company against a company which was put into receivership and later became bankrupt. The receiver regarded the claim as so inequitable that he refused to pay it, and he was supported in his position by the District Court and the Circuit Court of Appeals [P. R. Mallory & Co. v. Grigsby-Grunow Co., 72 F.(2d) 471]. The claim of the United Trust based on misappropriation of its securities was strictly legal in its nature and was brought into equity only because the Founders Trust was being liquidated there. There is nothing fraudulent or illegal about it, or in the relations between the two trusts. In holding that the United Trust might prove its claim against the Founders Trust we think the District Judge was clearly right.

As to the second point: Postponement rests on different considerations from those governing allowance or disallowance. If a claim which has been allowed is to be postponed, the reason therefor must be found in relations between the two parties approaching an estoppel against the creditor. In re Bowman Hardware & Elec. Co. (C.C.A.) 67 F.(2d) 792; E. E. Gray Corp. v. Meehan, 54 F.(2d) 223, 226 (C.C.A. 1). The character of the relations which will have this effect has not been defined further than to say that payment to one from the assets of the other in competition with the latter's general creditors will not be permitted when the circumstances are such that it would be inequitable. See Centmont Corp. v. Marsch, 68 F.(2d) 460 at pages 463, 466 (C.C.A. 1); In re Bowman Hardware & Elec. Co. (C.C.A.) 67 F.(2d) 792. It has been held that a parent corporation cannot prove in competition with outside creditors against the assets of a wholly owned subsidiary, Centmont Corp. v. Marsch, supra; and by parity of reasoning that a principal will not be allowed to prove in competition with general creditors against the assets of a person who acted wholly as his agent. In re Kentucky Wagon Mfg. Co. (D.C.) 3 F.Supp. 958; affirmed (C.C.A.) 71 F.(2d) 802. So also where one person or organization is a mere instrumentality of another person or organization, on the failure of the former the latter will not be permitted to prove against the assets in competition with general creditors. Centmont Corp. v. Marsch (C.C.A.) 68 F.(2d) 460, 466. See, too, Chicago, M. & St. P. Ry. v. Minneapolis Civic & Commerce Ass'n, 247 U.S. 490, 501, 38 S.Ct. 553, 62 L.Ed. 1229. To warrant postponement the practical result must be of such character as to work obvious injustice and shock the conscience of the court, if the claim be not postponed. Cases supra.

However, the master found that the claim of the United Trust against the Founders Trust to the amount of $647,143.-23 was a meritorious one; that it was not a case of a parent and subsidiary organization as in the case of Centmont Corp. v. Marsch, supra; that the Founders Trust and the United Trust were independently organized and were each organically self-contained legal business units, fully capable of separate existence and designed to function as such in every particular; that while they functioned together, and were referred to as the "system," the business of each trust was recorded in separate books in which open accounts were carried with each; that each trust maintained its own portfolios, and its securities at the beginning were kept in separate safe deposit vaults; that a time came when, because of adverse market conditions and unprofitable operations—as Judge Lowell graphically put it, "the enterprise was dismasted in the hurricane of October, 1929"—Richards, who controlled both trusts, began without lawful authority to draw freely upon the portfolio of the United Trust, and a large part of its securities were unlawfully appropriated to protect and bolster various loans and margin accounts of the Founders Trust; and ultimately all securities of the United Trust were transferred to the Founders Trust.

While the master made no definite finding to this effect, it is obvious, we think, that it was due to this use of the assets

of the United Trust that any assets were left in the hands of the Founders Trust for its creditors. That is apparent from the fact that, while assets of the United Trust to the amount of $647,000, which is the basis of its claim, were unlawfully transferred to the Founders Trust, assets of the value of less than $100,000 were turned over to the receiver of the Founders Trust. The investor in the United Trust may have understood that the two trusts would function together, and be managed together; but there is nothing to indicate that they understood that the securities of the United Trust would be used to protect the assets of the Founders Trust on margin accounts or on loans. We see no good reason why the creditors of the Founders Trust should be first paid from assets of the United Trust, which were unlawfully transferred to the Founders Trust and used to protect the assets of the Founders Trust, if in fact any assets lawfully belonging to the Founders Trust can be said to have been turned over to its receiver.

The master found the question in point to be a close one, but we think the equities of the United Trust as a creditor are at least on a parity with the creditors of the Founders Trust, and that it should share equally with the other creditors of the Founders Trust in such assets as are left in the hands of the receiver.

The decree of the District Court is vacated, and the case is remanded to that court, with instructions to enter a decree in accordance with this opinion.

MONTGOMERY et al. v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

No. 5645.

Circuit Court of Appeals, Seventh Circuit.

April 20, 1936.