In re Elio C. BELLUCCI, Debtor.

Bankruptcy No. 4–80–00213–G.

United States Bankruptcy Court,
D. Massachusetts.

Nov. 9, 1982.

Michael B. Katz, Bacon, Wilson, Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C., Springfield, Mass., for plaintiff.

John P. McAllister, Tax Division, Dept. of Justice, Washington, D.C., for defendant.

Office of the U.S. Trustee, Boston, Mass., for Trustee. ·

## MEMORANDUM AND ORDER ON TRUSTEE'S APPLICATION FOR EQUITABLE SUBORDINATION

PAUL W. GLENNON, Bankruptcy Judge.

The trustee in bankruptcy, Michael B. Katz ("trustee") filed the within application

requesting that the court equitably subordinate the tax claims of the Internal Revenue Service ("IRS") to the claims of a class of creditors to be created and comprised of former clients ("clients") of the debtor, Elio C. Bellucci ("Bellucci"), who were defrauded by the illegal activities of Bellucci.

## FACTS

Bellucci was an attorney practicing law in Springfield, Massachusetts. Due to certain fraudulent and illegal activities, he is no longer licensed to practice law. These activities included the misuse of more than $500,000 of his clients' funds. On April 14, 1980, the clients filed an involuntary chapter 11 petition. The IRS then filed a proof of claim for unpaid taxes owing, plus interest, for the years 1977 through 1979. For the reasons set forth more fully below, I am of the opinion that the claims of the IRS may not be subordinated to the claims of the clients, however much I sympathize with the clients.

## DISCUSSION

Under § 510(c)(1) of the Bankruptcy Code, (11 U.S.C. §§ 101 et seq.), the court may: "under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed claim to all or part of another allowed claim or all or part of an allowed interest to all or part of another allowed interest . . . ." An examination of the legislative history provides an insight into the intent of Congress in enacting this provision. In H.R.Rep. No. 595, 95th Cong. 1st Sess. 359 (1977) U.S.Code Cong. & Admin.News, pp. 5787, 6315 it is provided:

Subsection (b) [now subsection (c) ] permits the court to subordinate, on equitable grounds, all or any part of an allowed claim or interest to all or any part of another allowed claim or interest, and permits the court to order that any lien securing claim subordinated under this provision to be transferred to the estate. This section is intended to codify case law, such as *Pepper v. Litton,* 308 U.S. 295 [60 S.Ct. 238, 84 L.Ed. 281] (1939),

and *Taylor v. Standard Gas and Electric Co.,* 306 U.S. 307 [59 S.Ct. 543, 83 L.Ed. 669] (1938), and is not intended to limit the court's power in any way. The bankruptcy court will remain a court of equity, proposed 28 U.S.C. 1481; *Local Loan v. Hunt,* 292 U.S. 234, 240 [54 S.Ct. 695, 697, 78 L.Ed. 1230] (1934). Nor does this subsection preclude a bankruptcy court from completely disallowing a claim in appropriate circumstances. *See Pepper v. Litton, supra.* The court's power is broader than the general doctrine of equitable subordination, and encompasses subordination on any equitable grounds.

S.Rep. No. 989, 95th Cong. 2d Sess. 74 (1978) U.S.Code Cong. & Admin.News, p. 5860 reads, in relevant part, as follows:

Subsection (b) [now subsection (c) ] authorizes the bankruptcy court, in ordering distribution of assets, to subordinate all or any part of any claim to all or any part of another claim, regardless of the priority ranking of either claim. In addition, any lien securing such a subordinated claim may be transferred to the estate. The bill provides, however, that any subordination ordered under this provision must be based on principles of equitable subordination. These principles are defined by case law, and have generally indicated that a claim may normally be subordinated only if its holder is guilty of misconduct. As originally introduced, the bill provided specifically that a tax claim may not be subordinated on equitable grounds. The bill deletes this express exception, but the effect under the amendment should be much the same in most situations since, under the judicial doctrine of equitable subordination, a tax claim would rarely be subordinated.

And, finally, in 124 Cong.Rec.H. 11,095 (daily ed. Sept. 28, 1978) (statement of Rep Edwards) it is stated:

It is intended that the term "principles of equitable subordination" follow existing case law and leave to the courts development of this principle. To date, under existing law, a claim is generally subordinated only if [the] holder of such claim is

guilty of inequitable conduct, or the claim itself is of a status susceptible to subordination, such as a penalty or a claim for damages arising from the purchase or sale of a security of the debtor.

See also 124 Cong.Rec. S17,412 (daily ed. Oct. 6, 1978) (statement of Sen. DeConcini).

As case law provides, and the legislative history reflects, the court, as a court of equity may equitably subordinate one claim to another claim. In *Pepper v. Litton,* 308 U.S. 295, 307–308, 60 S.Ct. 238, 245–246, 84 L.Ed. 281 (1939), perhaps the leading case on equitable subordination, the Supreme Court held that: "In the exercise of its equitable jurisdiction the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." *See also Providence Realization Corp. v. Geist,* 316 U.S. 89, 62 S.Ct. 978, 86 L.Ed. 1293 (1942); *Sampsell v. Imperial Paper & Color Corp.,* 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293 (1941); *Taylor v. Standard Gas & Electric Co.,* 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939); *In re Multiponics, Inc.,* 622 F.2d 709 (5th Cir.1980); *In re Mobile Steel Co.,* 563 F.2d 692 (5th Cir.1977); *In re Ahlswede,* 516 F.2d 784 (9th Cir.), *cert. denied, Stebbins v. Crocker Citizens National Bank,* 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975); *Central States Corp. v. Luther,* 215 F.2d 38 (10th Cir.1954), *cert. denied,* 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955); *Columbia Gas & Electric Corp. v. United States,* 153 F.2d 101 (6th Cir.1946); *Corley v. Cozart,* 115 F.2d 119 (5th Cir.1940); and *In re Loewer's Gambrinus Brewery Co.,* 74 F.Supp. 909 (S.D.N.Y.1947), *aff'd,* 167 F.2d 318 (1948).

Traditionally, it has been held that absent some showing of fraud or inequitable conduct on the part of the claimant injurious to other creditors, no equitable ground exists for subordination of a claim. In *In re Columbia Ribbon Co.,* 117 F.2d 999, 1002 (3d Cir.1941) (referring to *Pepper v. Litton, supra*) the court stated: "That case holds that a court of bankruptcy under its equitable powers may disallow or subordinate a particular claim in bankruptcy which, because of the fraudulent nature of the claim or the bad faith or improper conduct of the claimant, ought not in equity and good conscience to be allowed or paid on a parity with other claims. It does not hold that the court may set up a subclassification of claims within a class given equal priority by the Bankruptcy Act and fix an order of priority for the subclasses according to its theory of equity." In *In re Ahlswede, supra,* at 787, the court stated:

> [T]he bankruptcy court's power to impose a result different from that prescribed by the statutory distribution scheme is not unlimited. The standard is that "[a claim's] disallowance or subordination may be necessitated by certain cardinal principles of equit[able] jurisprudence." *Pepper v. Litton, supra* [308 U.S.] at 306 [60 S.Ct. at 245] .... In defining the nebulous "cardinal principles of equitable jurisprudence," it is important to keep in mind that the [bankruptcy judge] never did, and does not now, exercise unrestricted power to contradict statutory or common law when he feels a fairer result may be obtained by application of a different rule. Courts of equity have long applied standards of conscience to conduct on an individual basis to prevent formally proper but unconscionable applications of legal rules; they have not engaged in the practice of making abstract legislative judgments about the fairness of a result contemplated by the legislature's statutory scheme if it has otherwise been followed in good faith and without overreaching. (citations omitted).

The court continued by summarizing the position stated in a trio of Supreme Court cases:

> [B]efore a bankruptcy court may disallow or subordinate a claim, some basis must exist of the sort traditionally cognizable by equity as justifying its intervention, such as fraud, breach of fidiciary duties, mismanagement, overreaching; in fact any breach of the multitudes of "rules of fair play and good conscience" (citation omitted) traditionally enforced by a court

of equity will suffice. A supposed inequity resulting when an innocent party in good faith asserts a legally valid claim will not (citations omitted). *Id.* at 788.

Likewise, in *In re Branding Iron Steak House,* 536 F.2d 299, 302 (9th Cir.1976) it was stated: "[W]e acknowledge that a claim may be subordinated even in the absence of fraud or mismanagement (citations omitted). Nevertheless, a Bankruptcy Court is a court of equity, and subordination requires some showing of suspicious, inequitable conduct . . . ." *See also Central States Corp. v. Luther,* 215 F.2d 38, 46 (10th Cir.1954), *cert. denied,* 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955) (subordination is within the court's powers where "it is necessary to prevent the consummation of conduct which is inequitable . . ."); *McDonell v. Sampsell,* 193 F.2d 954, 956 (9th Cir.1952) (quoting *In re Bowman Hardware & Electric Co.,* 67 F.2d 792, 794 (7th Cir.1933) (for a court to order subordination of a claim, "it must appear that [the claimant] has been guilty of some act involving moral turpitude or some breach of duty or some misrepresentation whereby other creditors were deceived *to their damage*"); *Columbia Gas & Electric Corp. v. United States,* 153 F.2d 101, 101 (5th Cir.1946) (bankruptcy court may exercise its powers of subordination where the "conduct [of the claimant] in acquiring or asserting his claim is contrary to established equitable principles"); *In re Kansas City Journal-Post Co.,* 144 F.2d 791, 800 (8th Cir.1944) ("the power of subordination necessarily must be measuredly and not blankly exercised . . . . It should not operate to take away anything punitively to which one creditor is justly entitled . . . and bestow it upon others, who in the relative situation have no fair right to it"); *In re Calpa Products Co.,* 249 F.Supp. 71, 73 (E.D. Pa.), *aff'd mem.,* 354 F.2d 1002 (1965), *cert. denied,* 383 U.S. 947, 86 S.Ct. 1204, 16 L.Ed.2d 209, *reh'g denied,* 384 U.S. 934, 86 S.Ct. 1444, 16 L.Ed.2d 535 (1966) (subordination on equitable grounds requires "that the claimant be guilty of at least some inequitable conduct"); *In re Loewer's Gambrinus Brewery Co.,* 74 F.Supp. 909, 913–914, (S.D. N.Y.1947), *aff'd,* 167 F.2d 318 (1948), ("[t]he

essence of the test is whether or not under all the circumstances the transaction carries the ear marks of an arms length bargain. If it does not, equity will set it aside"); and Herzog & Zweibel, *The Equitable Subordination of Claims in Bankruptcy,* 15 Vand. L.R. 83, 90–113 (1961) (suggesting that generally equitable subordination will be invoked in one of five situations, i.e., consensual subordination cases [either express or implied], capital contribution cases, cases involving fraud by the claimant, situations where there is illegality in the claim itself or in its enforcement, and "equitable considerations" cases where there is a fiduciary relationship between the claimant and the debtor. "[T]he direction is clear. The basic and overriding consideration of equity is the prevention of fraud and injustice when the remedy at law is inadequate". *Id.* at 113).

Perhaps the Fifth Circuit best summarized the law of equitable subordination in *In re Mobile Steel Co.,* 563 F.2d 692, 699–700 (5th Cir.1977):

[T]hree conditions must be satisfied before exercise of the power of equitable subordination is appropriate.

(i) The claimant must have engaged in some type of inequitable conduct. *Comstock v. Group of Institutional Investors,* 335 U.S. 211, 229, 68 S.Ct. 1454, 1463, 92 L.Ed. 1911, 1923 (1948); *Spach v. Bryant,* 309 F.2d 886, 889 (5th Cir. 1962); *Frasher v. Robinson,* 458 F.2d 492, 493 (9th Cir.1972), *cert. denied,* 409 U.S. 1009, 93 S.Ct. 443, 34 L.Ed.2d 302 (1972).

(ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. *Comstock v. Group of International Investors,* 335 U.S. at 229, 68 S.Ct. at 1463, 92 L.Ed. at 1923; *In re Branding Iron Steak House,* 536 F.2d 299, 302 (9th Cir.1976); *In re Brunner Air Compressor Corp.,* 287 F.Supp. 256, 265 (N.D.N.Y.1968); *See Wages v. Weiner,* 381 F.2d 667, 670 (5th Cir.1967).

(iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act. *Luther v. United States,* 225 F.2d 495, 499 (10th Cir.1955), *cert. denied,* 350 U.S. 947, 76 S.Ct. 321, 100 L.Ed. 825 (1956); *In re Columbia Ribbon Co.,* 117 F.2d 999, 1002 (3d Cir.1941); *See American Mutual Life Ins. Co. v. City of Avon Park, Florida,* 311 U.S. 138, 145, 61 S.Ct. 157, 161, 85 L.Ed. 91, 95 (1940) *quoting SEC V. United States Realty & Improvement Co.,* 310 U.S. 434, 455, 60 S.Ct. 1044, 1053, 84 L.Ed. 1293, 1303 (1940); *In Re Texas Consumer Finance Corp.,* 480 F.2d 1261, 1265 (5th Cir. 1973).

In *In re Koenecke & Sons, Inc.,* 533 F.2d 1020 (7th Cir.1976), *cert. denied, Hyman v. Department of Revenue,* 429 U.S. 1038, 97 S.Ct. 734, 50 L.Ed.2d 749 (1977), the United States Court of Appeals reversed the United States District Court for the Northern District of Illinois which had affirmed the bankruptcy court's decision disallowing the state's claim for unpaid cigarette taxes. In that case, the debtor, a licensed cigarette distributor, attempted to obtain maximum cigarette tax discounts through multiple licenses. This was done with the knowledge and cooperation of employees of the Department of .Revenue. In reversing the district court, the court of appeals stated: "[A]ll the people of the State are benefited when taxes which are lawfully owed are collected. Therefore, we are of the opinion that the bankruptcy judge should not have subordinated the State's claim to the claims of general creditors unless the general creditors can establish some type of priority for their claims under the bankruptcy act." *Id.* at 1024–1025. No such priority was established. Although the facts of that case are dissimilar to the case at bar, the holding is certainly instructive. And, as the equities in that case appear even stronger (due to the involvement of state employees) and the tax claims nonetheless retained priority, it follows that the tax claims in the instant case should also retain priority.

I have quoted at length from various authorities to justify what may appear to be, in the circumstances of this case, a harsh result.[1] In this case, the creditors are not "typical" creditors. By that I mean they are not persons in the business of providing goods or services on credit. Rather, they are clients of the debtor who for various reasons entrusted management of their funds with Bellucci, an attorney. According to the chapter 7 trustee, these clients included accident victims, who had received settlement awards, and elderly persons. In some cases the funds converted by Bellucci to his own use represented the client's principal source of support. The trustee has generated approximately $125,000 in liquidating the debtor's estate. However, it appears that the tax claims of the IRS will consume all of the funds generated by the trustee.[2] For this reason, I believe that the provisions of § 510(c) mandate, in circumstances like that before me, unfortunate results. However, it is not within the province of the court to fashion the Bankruptcy Code to meet the facts and needs of the particular case before it. Applying a long line of case law to the facts, as the legislative history directs I do, I must deny the trustee's application for equitable subordination. "It is for Congress, and not the Courts, to determine priorities in both taxation and Bankruptcy. Since Congress has decided that ... taxes shall have first priority in Bankruptcy, it is their decision and not [mine] that the United States shall take

---

1. As a proof of claim in the amount of $400,000 ("potential") was filed by the Clients Security Board, it appears that at least some of the clients' claims may be paid, to some extent, by the Clients Security Board. (The claims of the Clients Security Board would be subrogated, in turn, to any distribution from Bellucci's estate, authorized by the court, to the clients.) Therefore, the result may not be as harsh as it otherwise appears.

2. The I.R.S. has filed a Proof of Claim in the amount of $346,890.97, including interest and penalties. Of this amount the I.R.S. lists $112,-501.20 as an unsecured general claim. The debtor, with leave of court, is challenging the tax assessments in an action pending before the United States Tax Court.

all and the other claimants nothing. *United States v. Rochelle,* 384 F.2d 748, 752 n. 5 (5th Cir.1967), *cert. denied,* 390 U.S. 946, 88 S.Ct. 1032, 19 L.Ed.2d 1135 (1968). Maybe Congress will see fit to address this very issue in the future, but until that time, I will apply the law as it now stands.

Accordingly, the motion of the trustee for equitable subordination and creation of a class of priority creditors is hereby DE-NIED.