75 B.R. 387 (1987)
In the Matter of Edward Eugene POWE, Debtor.
O.H. WRIGHT, Freddie T. Wright, Bartow Motor Parts, Inc., Plaintiffs,
v.
The UNITED STATES of America, Defendant.
Bankruptcy No. 82-436, Adv. No. 86-281.
United States Bankruptcy Court, M.D. Florida, Tampa Division.
June 1, 1987.
*388 Robert H. Buesing, Tampa, Fla., for plaintiffs.
Virginia Covington, Asst. U.S. Atty., Tampa, Fla., Edwin Meese, Dept. of Justice, Tax Div., George T. Rita, Tax Div., Dept. of Justice, Washington, D.C., for U.S.

FINDINGS OF FACT, CONCLUSION OF LAW AND MEMORANDUM OPINION
ALEXANDER L. PASKAY, Chief Judge.
AT TIMES controversies arise which at first blush appear not to present any particular problems and seem to be susceptible to an easy resolution, yet on closer analysis turn out to be extremely bothersome because the resolution of the controversy if based only on the cold letter of the controlling law produces a patently unfair and unjust result. As it is not uncommon in these type of situations, the relevant facts appear to be without dispute and are as follows:
Edward Eugene Powe (Debtor) at the time relevant was engaged in the automotive parts business. As a result of an ongoing fraudulent scheme the Debtor defrauded O.H. Wright, Freddie T. Wright, Bartow Motor Parts, Inc. (Plaintiffs), the Plaintiffs who instituted this adversary proceeding, and several other parties not involved in this adversary proceeding. After the discovery of the fraudulent conduct of the Debtor, he was indicted, tried and found guilty and was sentenced to 8 years of imprisonment and placed on probation for 15 years.
On March 10, 1982, the Debtor while in prison filed his voluntary Petition for Relief under Chapter 7 of the Bankruptcy Code. In due course the Plaintiffs filed an adversary proceeding and sought and obtained by default a final judgment in the amount of $1,094,034.40 and a declaration of non-dischargeability of the liability represented by the judgment. The initial notice scheduling the Meeting of Creditors indicated that since the case appeared to be a no-asset case, creditors need not file proofs of claim. However, subsequently the Trustee was able to recover some assets; therefore, the creditors were notified of the deadline to file proofs of claim.
On July 7, 1984, the Internal Revenue Service (IRS) filed a proof of claim for priority taxes in the sum of $567,287.64. This proof of claim was amended on October 1, 1985, to reflect a total of $298,243.13. Part of this claim is based upon an audit *389 deficiency in income tax for the taxable year 1981 in the sum of $188,557.47 plus fraud penalties of $108,992.53 for failure to file tax returns for that year. The Plaintiffs, unsecured creditors, filed an objection to the IRS proof of claim which was overruled by Order of this Court on March 26, 1986, without prejudice to their right to file an adversary proceeding seeking subordination of the claim of the IRS to their claims.
Following this Order the Plaintiffs filed their adversary proceeding, and in the Complaint they contend in Count I that the claim of the IRS shall be subordinated to their claims pursuant to § 510(c) of the Bankruptcy Code; in Count II the claim of the Plaintiffs is based on the proposition that the taxes claimed for the year 1981 are, in fact, fines and penalties and not compensation for a pecuniary loss of the Government, therefore, pursuant to § 726(a), the Court shall not authorize payment on this claim unless all unsecured claims are satisfied in full. The last claim of these Plaintiffs set forth in Count III is based on the proposition that the funds currently in the hands of the Trustee shall be impressed by a constructive trust in favor of the Plaintiffs and satisfied in full before any payment can be made to the IRS.
The final report of the Trustee indicates gross receipts of $65,411.19. In light of the fact that the monies available for distribution are far short to pay any dividends to general unsecured creditors unless they prevail on the theories advanced by them in their Complaint, particularly their claim of subordination, this should be the first issue to be considered. This is so because the tax claim of the IRS would be paid pursuant to the priority provision of § 507(a)(7) of the Bankruptcy Code, and if that occurs, that will leave no funds whatsoever to pay dividends to the general unsecured creditors.
The concept of equitable subordination is long recognized in the American Jurisprudence. Even though the Act of 1898 did not have a specific provision dealing with subordination of claims, courts never hesitated to order subordination in order to achieve a fair and just result. Pepper v. Litton, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). Section 510(c) of the Bankruptcy Code expressly deals with this subject and provides that:
§ 510(c) Notwithstanding subsections (a) and (b) of this section, after notice and a hearing, the court may 
(1) under principles of equitable subordination, subordinate for purposes of distribution all or part of an allowed interest to all or part of another allowed interest.
According to the legislative history of this Section, the Section was intended to codify prior case law and was not intended to limit the court's power in any way. H.R.Rep. No. 595, 95th Cong. First Sess. 359 (1977) U.S.Code Cong. & Admin.News, pp. 5787, 6315. Congress specifically left it to the courts to develop general principles which might be considered to be germane to the question of subordination. 124 Cong.Rec.H. 11095 (daily ed. September 28, 1978) (statement of Representative Edwards).
In re Branding Iron Steak House, 536 F.2d 299, 302 (9th Cir.1976) it was stated: "[We] acknowledge that a claim may be subordinated even in the absence of fraud or mismanagement (citations omitted). Nevertheless, a Bankruptcy Court is a court of equity, and subordination requires some showing of suspicious, inequitable conduct. . . ." See also Central States Corp. v. Luther, 215 F.2d 38, 46 (10th Cir.1954), cert. denied, 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955) (subordination is within the court's powers where "it is necessary to prevent the consummation of conduct which is inequitable . . ."); McDonnell v. Sampsell, 193 F.2d 954, 956 (9th Cir.1952) (quoting In re Bowman Hardware & Electric Co., 67 F.2d 792, 794 (7th Cir.1933) (for a court to order subordination of a claim, "it must appear that [the claimant] has been guilty of some act involving moral turpitude or some breach of duty or some misrepresentation whereby other creditors were deceived to their damage"); In re Kansas City Journal-Post Co., 144 F.2d 791, 800 (8th Cir.1944) ("the power of subordination necessarily must be measuredly and not blankly exercised. . . . It should not operate to take away anything *390 punitively to which one creditor is justly entitled . . . and bestow it upon others, who in the relative situation have no fair right to it"); In re Calpa Products Co., 249 F.Supp. 71, 73 (E.D.Pa.) aff'd mem. 354 F.2d 1002 (3rd Cir.1965), cert. denied, 383 U.S. 947, 86 S.Ct. 1204, 16 L.Ed.2d 209, reh'g denied, 384 U.S. 934, 86 S.Ct. 1444, 16 L.Ed.2d 535 (1966) (subordination on equitable grounds requires "that the claimant be guilty of at least some inequitable conduct"); In re Loewer's Gambrinus Brewery Co., 74 F.Supp. 909, 913-914 (S.D.N.Y.1947), aff'd, 167 F.2d 318 (2nd Cir.1948), ("[t]he essence of the test is whether or not under all the circumstances the transaction carries the ear marks of an arms length bargain. If it does not, equity will set it aside").
The leading case of Pepper v. Litton, supra, held that "in the exercise of its equitable jurisdiction, the bankruptcy court has the power to sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankrupt estate." See also, Central States Corp. v. Luther, 215 F.2d 38, 46 (10th Cir.1954), cert. denied 348 U.S. 951, 75 S.Ct. 438, 99 L.Ed. 743 (1955) (subordination is within the court's powers where "it is necessary to prevent the consummation of conduct which is inequitable . . ."); Columbia Gas and Electric Corp. v. United States, 153 F.2d 101 (6th Cir.1946) (bankruptcy court may exercise its powers of subordination where the "conduct [of the claimant] in acquiring or asserting his claim is contrary to established equitable principles").
Courts traditionally held, as appears from the cases dealing with this question Pepper v. Litton, supra; Taylor v. Standard Gas and Electric Co., 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939), that absent some showing of fraud or inequitable conduct on the part of the claimant injurious to other creditors, no equitable ground exists for subordination of a claim. In In re Columbia Ribbon Co., 117 F.2d 999, 1002 (3d Cir.1941) (referring to Pepper v. Litton, supra) the court stated:
"That case holds that a court of bankruptcy under its equitable powers may disallow or subordinate a particular claim in bankruptcy which, because of the fraudulent nature of the claim or the bad faith or improper conduct of the claimant, ought not in equity and good conscience to be allowed or paid on a parity with other claims. It does not hold that the court may set up a subclassification of claims within a class given equal priority by the Bankruptcy Act and fix an order of priority for the subclasses according to its theory of equity.
It is noteworthy, however, that the power of the bankruptcy court to impose a result different from that prescribed by the statute and circumvent the statutory scheme of distribution is not unlimited as noted in the case of In re Ahlswede, 516 F.2d 784 (9th Cir.) cert. denied, 423 U.S. 913, 96 S.Ct. 218, 46 L.Ed.2d 142 (1975). It is always important to keep in mind that the bankruptcy judge never had and does not have now an unrestricted power to contravene the statutory or common law, just because he is of the opinion that the fairer result may be obtained by deviating from the mandate of the statute. As stated by the Ninth Circuit in Ahlswede, supra:
"Courts of equity have long applied standards of conscience to conduct on an individual basis to prevent formally proper but unconscionable applications of legal rules; they have not engaged in the practice of making abstract legislative judgments about the fairness of a result contemplated by the legislature's statutory scheme if it has otherwise been followed in good faith and without over-reaching."
Based on the foregoing, it is clear that absent a contractual subordination, a bankruptcy court will not subordinate a claim of a creditor to other claims unless it is established that the creditor whose claim sought to be subordinated engaged in a conduct which would justify subordination by a court of equity. This usually involves violations *391 of the multitude of rules of fair play such as a conduct evidencing a lack of observance of good conscience. The classic examples of the types of conduct which would justify subordination are (1) fraud, (2) breach of fiduciary duty, (3) unfair overreaching, or (4) mismanagement by insiders taking unfair advantage of corporate opportunities. On the other hand, when an innocent party asserting a legitimate claim is not guilty of any of the conduct described, there is no basis and justification to subordinate the claim of this creditor. This is so even when the refusal to subordinate admittedly produces an unfair result. These principles have been recognized generally by lower courts and also adopted by the Fifth Circuit Court of Appeals in In re Mobile Steel Co., 563 F.2d 692, 699-700 (5th Cir.1977) when the court stated that:
"(i) the claimant must have engaged in some inequitable conduct. (ii) the misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant. (iii) equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act." [citations omitted, emphasis supplied]
The case of In re Bellucci, 24 B.R. 493, 497-98 (Bankr.D.Mass.1982), involved a strikingly similar factual setting where the question of equitable subordination arose. In Bellucci, the Debtor was an attorney practicing law in Springfield, Massachusetts. Due to certain fraudulent and illegal activities, he is no longer licensed to practice law. These activities included the misuse of more than $500,000.00 of his clients' funds. On April 14, 1980, the clients filed an involuntary Chapter 11 Petition. The IRS then filed a proof of claim for unpaid taxes owing, plus interest, for the years 1977 through 1979.
In Bellucci the trustee sought a subordination of the tax claims of the Government on the basis that to permit the Government to accord its traditional priority position would produce an inequitable result because the net effect would be to deprive the victims of the debtor to share in the proceeds of the liquidation obtained by the trustee. In Bellucci the court noted that under subsection (b) of § 510, subordination may be ordered but only when it is based on principles of equitable subordination. The court rejected the trustee's motion in Bellucci relying primarily on the case of In re Ahlswede, supra.
In the present instance, although it is intimated that the IRS in some fashion is guilty of inequitable conduct, there is nothing in this record which would support this proposition. This not very well articulated claim is based on the proposition that the IRS when it made the determination of tax deficiency it made an allowance to the Debtor for funds which were recovered by some of the victims. This procedure was, of course, fully consistent with the Internal Revenue Code, and what the IRS did was nothing more than follow the mandate of Congress in collecting taxes rightfully due and owing to the Government.
To overcome the obvious, counsel for the Plaintiffs urge that it would be grossly unfair to permit a payment of a Government tax priority claim from the limited funds available because the Debtor was a thief who embezzled funds from these very Plaintiffs and inasmuch as the IRS claim is based on unpaid income taxes on the very same embezzled funds, it would be unfair to permit the government to receive the fruit of the crime and not to permit these victims at least in part to recover their losses.
The record in this case reveals that there are numerous creditors who filed a proof of claim, and not all of them appear to be victims of the fraudulent conduct of the Debtor. For instance, Katharine F. Powe, who appears to be a former wife of the Debtor, filed a proof of claim in the amount of $17,523.45, which claim is based on the unpaid balance of the purchase by the Debtor of a business formerly owned by Katharine F. Powe. If the Plaintiffs' position is sustained, the funds available for distribution must be paid pro rata to all properly filed and allowed claims. While it *392 is proper under certain specific conditions to grant subordination to only a certain class of claimants, it is clear that there are other victims of the Debtor other than the Plaintiffs who are not involved in this litigation who also should enjoy the benefit if subordination is granted.
In sum, this would create an anomalous situation by permitting some victims to obtain a super priority over the statutory established priority granted by the Government by § 507(a)(7) of the Bankruptcy Code and not others. As noted in In re Ahlswede, supra, a supposed inequity which might result when an innocent party's claim is subordinated, is insufficient ground in invoking the equitable principle of subordination, and the bankruptcy court has no power to contradict the statutory or common law just because to do so would produce a fairer result. This being the case, this Court is satisfied that based on the foregoing, the Plaintiffs cannot prevail on their claim based on the doctrine of equitable subordination.
This leaves for consideration the contention that the tax involved in this particular matter is, in fact, a penalty and, therefore, by virtue of § 726 of the Bankruptcy Code, it is relegated to the fourth class entitled to share in the funds of the estate.
Even a cursory examination of the Government tax claim leaves no doubt that it is not a penalty, but a demand by the Government to be compensated for monetary loss. While at one time it was contended that monies stolen by a thief does not produce a taxable income, this proposition has been laid to rest a long time ago by the Supreme Court in the case of James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), in which the Supreme Court concluded that all types of illegal gains are treated as income and as such, taxable. At page 219, 81 S.Ct. at page 1055 the Supreme Court stated:
A gain "constitutes taxable income when its recipient has such control over it that, as a practical matter, he derives readily realizable economic value from it." Rutkin v. United States, supra, [343 U.S. 130], at p. 137 [72 S.Ct. 571, 575, 96 L.Ed. 833 (1952)]. Under these broad principles, we believe that petitioner's contention, that all unlawful gains are taxable except those resulting from embezzlement, should fail.
When a taxpayer acquires earnings, lawfully or unlawfully, without the consensual recognition, express or implied of an obligation to repay and without restriction as to their disposition, "he has received income which he is required to return, even though it may still be claimed that he is not entitled to retain the money, and even though he may still be adjudged liable to restore its equivalent." North American Oil v. Burnet, supra, [286 U.S. 417], at p. 424 [52 S.Ct. 613, 615, 76 L.Ed. 1197 (1932)]. In such case, the taxpayer has "actual command over the property taxed  the actual benefit for which the tax is paid," Corliss v. Bowers, supra [281 U.S. 376, 50 S.Ct. 336, 74 L.Ed 916 (1930)]. This standard brings wrongful appropriations within the broad sweep of "gross income"; it excludes loans.
Based on the foregoing principles, it is quite evident that if an imposition of tax liability for unpaid taxes based on income are deemed to be penalties, the United States will never receive any payment of its tax claim in the Chapter 7 case and the priority accorded to the United States by § 507(a)(7) would be totally academic, simply because there is seldom, if ever, sufficient funds produced through liquidation in a Chapter 7 case to pay all unsecured claims in full and monies still would would be left over to pay a claim based on penalties pursuant to § 726(a)(4). If Congress intended to carve out an exception from the principles stated by the Supreme Court in James v. United States, supra, it certainly could have done so, and that is not for this Court to deviate from the principles and create a special treatment for the tax claim of the Government based on an income of the Debtor. Cf. Racketeer Influenced and Corrupt Organizations Act, (RICO), 18 U.S.C. § 1961, et. seq., where Congress did provide prosecutors and crime victims (emphasis supplied) with new and powerful *393 tools to stop criminals and recover the fruits of criminal activity for those who have been victimized.
This leaves for consideration the last theory advanced by the Plaintiffs in support of their claim, which is their right for the imposition of a constructive trust on the funds in the hands of the Trustee. The doctrine of constructive trusts is a recognized tool of equity designed in situations to right a wrong committed and to prevent unjust enrichment of one person at the expense of another either as a result of fraud, undue influence, abuse of confidence, or mistake involved in the transaction. Vol. 56, Fla.Jur.2d Par. 86, pg. 87. Like any equitable principle, it cannot contravene the specific statutory provisions and can only be used to accomplish a desired result so long as such result is consistent with specific statutory provisions, if one exists. The treatment of tax claims is the subject specifically dealt with by § 507(a)(7) of the Bankruptcy Code, which accords to taxing authorities a 7 priority status and obviously no dividend can be made to general unsecured creditors unless all claims entitled to priority are paid in full.
It is elementary and it is well established that before one can successfully impress a constructive trust, the party seeking this remedy must have an identifiable res on which the trust could be impressed. And even if the original res no longer remains but is transformed in a different type of property, such as funds, it is the burden of the party seeking to impress a constructive trust to trace the property to specific funds before it can prevail.
Even assuming but not admitting that this Court would be free to disregard the scheme of distribution provided for by § 726 of the Bankruptcy Code, the difficulty of these Plaintiffs to establish a constructive trust on the funds in the hands of the trustee should be evident once one examines even perfunctorily the final report of the Trustee. As noted earlier, the Trustee's final report indicates that during the administration the Trustee realized $65,411.19 and after disbursement the funds available for distribution at this time are $60,485.78, the final report of the Trustee indicates that these funds were derived for the sale of assets of the Debtor from which the Trustee realized $50,000.00, a recovery of deposit of funds with different entities in the amount of $7,375.49; a tax refund of $35.70; and compromises of two controversies, one in the amount of $5,000.00; the other one in the amount of $3,000.00.
This Court is not unmindful of the decision of the United States District Court for the Northern District of Georgia in the case of First National Bank of Cartersville v. Hill, 412 F.Supp. 422 (1976), in which case Judge O'Kelley held that the constructive trust impressed on certain specific properties purchased by impressed funds are superior to any Federal tax lien asserted by the Government against the party who impressed the funds. While at first blush it might appear that this decision supports the constructive trust theory advanced by the Plaintiffs in this case, there is one significant difference which in this Court's judgment would require the result reached. In the First National Bank of Cartersville, supra, the problem involved determining a tax lien claim of the government on property of the tax payer. In that case the Court rightfully held that the thief who embezzled the funds from the bank obtained no title to the property rights in the funds, neither in the property purchased with those embezzled funds, and therefore, the tax lien asserted by the Government could not have attached to the specific piece of property involved.
In the present instance there is no identifiable res on which a constructive trust could be impressed. There is nothing in this record which would warrant the conclusion that any of these monies on which now the Plaintiffs seek the impression of a constructive trust were ever obtained by the Debtor from these Plaintiffs. On the contrary, the Final Report of the Trustee clearly indicates the source of the funds available for distribution has nothing to do whatsoever with the funds obtained by the Debtor through fraud from the Plaintiff, and they were obtained by the Trustee from the settlement of controversies, obtaining tax refunds and refunds of deposits.
*394 There is an additional difficulty with the position of these Plaintiffs which should be evident from this record, that if they prevail, this Court agrees to impress a constructive trust on the funds of the trustee, funds in the hands of the trustee, such trust must enure to the benefit of all creditors who filed a proof of claim. Several have absolutely nothing to do with any alleged fraud committed by the Debtor and certainly would not be entitled under any theory to have a share in the funds on which the constructive trust is impressed. For this reason it is evident that the First National Bank of Cartersville case furnishes scant, if any, authority for the proposition urged by the Plaintiffs in support of their claim set forth in Count III of their Complaint.
In sum, this Court is satisfied that these Plaintiffs cannot prevail on their claim set forth in Count III of the Complaint, and therefore, summary judgment shall be entered in favor of the Defendant, United States of America, against the Plaintiff on all three claims set forth in the Complaint filed by the Plaintiffs. A separate final summary judgment will be entered in accordance with the foregoing.